LYNCH et al., Appellants,

v.

DIAL FINANCE COMPANY OF OHIO NO. 1, INC. et al., Appellees.

[Cite as *Lynch v. Dial Finance Co. of Ohio No. 1, Inc.* (1995), 101 Ohio App.3d 742.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67114.

Decided March 20, 1995.

*Joseph M. Patton,* for appellants.

*Jones, Day, Reavis & Pogue, Jeffrey D. Ubersax* and *Jeffrey J. Jones,* for appellees Dial Finance Company of Ohio No. 1, Inc., Norwest Financial Ohio 1,

Inc., Norwest Financial America, Inc., Norwest Financial Ohio, Inc., # 245, Norwest Financial Ohio, Inc., and Jeffrey A. Borsz.

*Betty D. Montgomery*, Attorney General, *Samuel H. Simon* and *Julia M. Graver*, Assistant Attorneys General, for appellees Rae Ann Estep, Harold Duryee and Attorney General.

---

JAMES M. PORTER, Presiding Judge.

Plaintiffs-appellants Robert and Arden Lynch appeal from an adverse summary judgment granted by the trial court in favor of the defendants-appellees Dial Finance Company of Ohio No. 1, Inc., its affiliated successors and office manager arising out of plaintiffs' claim that defendants violated the Second Mortgage Loan Act ("MLA"), R.C. 1321.51 *et seq.*, by charging plaintiffs for credit accident and health insurance to secure the loan. Plaintiffs' claims relate back to loans made in the late 1970s. Plaintiffs also appeal from the dismissal from the action of the Attorney General of Ohio, the Superintendent of the Ohio Department of Commerce and the Ohio Director of Insurance. We find no error in the court's summary judgment ruling and affirm.

The case arose out of a series of thirteen relatively small consumer loans made by defendants to plaintiffs from 1974 through 1990. The proceeds of each successive loan were used in part to pay off the prior loan. Defendants charged plaintiffs for credit health and accident insurance costs (separately stated on the loan documents) on three loans made between 1976 and 1978. The primary issue centered on whether the defendant finance companies, who were subject to the MLA, were entitled to charge plaintiffs for these accident and health insurance costs, totalling $1,428.86 as part of these loan transactions.[1]

Plaintiffs filed this action on April 6, 1992, seeking approximately $2.9 million for statutory double damages and reduced interest under the relevant MLA section (R.C. 1321.56). Plaintiffs also asserted related fraud claims. The state of Ohio officials were dismissed on September 2, 1992. An amended complaint was filed on November 13, 1992 containing ninety-five pages, over two hundred paragraphs and twenty-one causes of action. Following discovery and several pretrials, the finance company defendants moved for summary judgment on September 28, 1993. Over plaintiffs' opposition, the trial court granted defendants' motion without opinion or comment on March 9, 1994. A timely appeal ensued.

---

1. Plaintiff conceded below, after receiving disclosure documents, that the claims on the 1989 and 1990 loan transactions should be dismissed from their November 13, 1992 amended complaint. According to Plaintiffs' Exhibit B, no charges for accident and health insurance were made on six loans between 1979 and 1988.

On appeal, the plaintiffs designate twelve assignments of error (see Appendix) and raise forty-five specific issues for our consideration. We find plaintiffs' first assignment of error to be critical to the disposition of the appeal and the numerous issues subsumed therein. Plaintiffs' first assignment of error states as follows:

"I. The trial court erred by granting appellees' motion for summary judgment."

■ Defendants' motion for summary judgment was based on the contention that they did not violate the MLA by charging for accident and health insurance and, in any event, plaintiffs' claims for statutory damages under the MLA were barred by the one-year statute of limitations relating to penalties and forfeitures (R.C. 2305.11[A]). We will first address the statute of limitations defense.

R.C. 2305.11(A) requires that "an action upon a statute for a penalty or forfeiture shall be commenced within one year after the cause of action accrued * * *."

R.C. 1321.56, on which plaintiffs' MLA claims depend, states as follows:

"Any person who willfully violates section 1321.57 of the Revised Code shall forfeit to the borrower twice the amount of charges contracted for, unless a greater forfeiture is required by another law applicable to the transaction, in which case the registrant shall forfeit the greater amount required by such other law. The maximum rate of interest applicable to any loan transaction which does not comply with all provisions of section 1321.57 of the Revised Code shall be the rate which would be applicable in the absence of sections 1321.51 to 1321.60, inclusive, of the Revised Code."

It cannot be disputed that "twice the amount of charges contracted for" and the reduction of interest imposed for violation of MLA are forfeitures as the language of the statute compels. Since the MLA does not contain a designated statute of limitations, the one-year statute of limitations of R.C. 2305.11(A) applies.

The "forfeitures" for which plaintiffs seek recovery relate specifically to three loans made and dated November 4, 1976, April 4, 1977 and November 6, 1978, the interest on which plaintiffs extrapolate to the later refinanced loans. Notwithstanding plaintiffs' arguments hereinafter discussed, we find that those claims are barred by the one-year statute of limitations applicable to penalties and forfeitures, R.C. 2305.11(A).

To overcome the applicable limitations period, plaintiffs make three arguments for exception: (1) the series of thirteen loans over the last seventeen years constitute one "continuing" loan; (2) the plaintiffs did not "discover" that the statute was violated or they were injured until their lawyer explained the law to

them in December 1991; and (3) they have a common-law claim for fraud that survives independently of their statutory claim. We find these arguments unpersuasive.

■ The loans were thirteen separate transactions with different promissory notes, loan statements, closings, monthly payment obligations, terms and interest rates. Each time a new loan was taken out, the prior loan was "refinanced," *i.e.*, paid off in full and closed. There is no factual basis for arguing that the loans in the 1970s were "continued" by the loans in the 1980s. There would be no point in refinancing if the prior loans continued to survive as obligations in any form.

■ Plaintiffs argue that the one-year statute of limitations should be tolled until they "discovered" in December 1991 from their lawyer that the accident and health features of the 1976–1978 loans violated the MLA. We disagree. As this court has previously held: "The cause of action accrues, in the case of torts, when the wrongful act is committed, and in case of statutory actions, when the violation of the statute occurs." *Squire v. Guardian Trust Co.* (1947), 79 Ohio App. 371, 383, 35 O.O. 144, 149–150, 72 N.E.2d 137, 146. Even if "injury" is the triggering mechanism, injury here was virtually simultaneous with the alleged statutory violation because defendant was "overcharged" and started paying the insurance premiums during the course of the 1976–1978 loans.

■ The Supreme Court recognized in *Zimmie v. Calfee, Halter & Griswold* (1989), 43 Ohio St.3d 54, 538 N.E.2d 398, that an injured person need not be aware of the full extent of the injury before there is a "cognizable event" triggering the statute of limitations. "Instead, it is enough that some noteworthy event, the cognizable event, has occurred which does or should alert a reasonable person" that a wrong has taken place. *Id.* at 58, 538 N.E.2d at 402. See, also, *Columbus Bd. of Edn. v. Armstrong World* (1993), 89 Ohio App.3d 846, 851, 627 N.E.2d 1033, 1037 (the discovery rule states that the cause of action accrues when the plaintiff knew or, in the exercise of reasonable diligence, should have known, of the injury). Accordingly, we find that the discovery rule does not apply to plaintiffs' statutory claims in this action.

■ Even if, *arguendo*, the discovery rule did apply to statutory claims, it would apply to the discovery of *facts*, not to the discovery of what the *law* requires. *Flowers v. Walker* (1992), 63 Ohio St.3d 546, 549, 589 N.E.2d 1284, 1287 ("constructive knowledge of facts, rather than actual knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule"); *Hershberger v. Akron City Hosp.* (1987), 34 Ohio St.3d 1, 5, 516 N.E.2d 204, 207 ("the basic thrust of the standard is that knowledge of facts rather than discovery of legal theories is the test"); *Oliver v. Kaiser Community Health Found.* (1983), 5 Ohio St.3d 111, 5 OBR 247, 449 N.E.2d 438 (medical

malpractice action accrues when the patient discovers, or in the exercise of reasonable care and diligence should have discovered, the fact that he has a medical injury); *Richards v. St. Thomas Hosp.* (1986), 24 Ohio St.3d 27, 24 OBR 71, 492 N.E.2d 821 (discovery rule applies to the discovery of fact that the patient has a medical injury, not discovery of the alleged malpractice). In short, ignorance of the law does not toll the statute of limitations. *Jackson v. Richards Med. Co.* (C.A.6, 1992), 961 F.2d 575, 580; *Jones v. Gen. Motors Corp.* (C.A.6, 1991), 939 F.2d 380, 385; *Conrad v. Fifth Third Bank* (June 30, 1993), Sandusky App. No. S–92–27, unreported, 1993 WL 235794.

In this case, plaintiffs knew or should have known about the charges for accident and health insurance because they were itemized on the face of the loan documents which they signed in the latter 1970s. What plaintiffs "discovered" seventeen years later is that their lawyer told them that these charges allegedly violated R.C. 1321.57. That "discovery" cannot be used to circumvent the statute of limitations or limitations would become meaningless.

In arguing for the "discovery" rule in this case, plaintiffs rely heavily on *Hamilton v. Ohio Savings Bank* (1994), 70 Ohio St.3d 137, 637 N.E.2d 887, which held that under the federal Truth–In–Lending Act, Section 1640(e), Title 15, U.S.Code, the one-year statute of limitations began to run at the time the mortgages were executed. However:

"The time within which appellants are required to bring an action against the bank may be tolled until they discovered or had reasonable opportunity to discover the alleged fraud or nondisclosures that formed the basis for their Truth in Lending action. This determination necessarily involves questions of fact that preclude summary judgment." *Id.* at 140, 637 N.E.2d at 889.

Although *Hamilton* may, at first blush, offer support for plaintiffs' "discovery" contentions herein, it is readily distinguishable. In *Hamilton* there was considerable confusion on what the language of the loan documents meant in determining interest charges on the face of the Regulation Z forms.[2] Here in the late 1970s there was no doubt of the precise amounts that plaintiffs were being charged for accident and health insurance, as those charges were separately itemized on the face of the very loan documents that plaintiffs signed each time a loan was made. Plaintiffs cannot claim they did not know or in the exercise of ordinary diligence could not have known that they were being charged for accident and health

---

2. In *Hamilton,* one loan document computed interest as "9.25% (365/360 method)," while a second document computed the interest as "9.25% (360/360 method.)" The result of using different computation methods was not discovered until a mortgagor who held mathematic and economic degrees discovered that the 365/360 method resulted in payments insufficient to fully amortize the principal over the term of the loan, leaving outstanding balances at the end of the loan term. *Id.* at 138, 637 N.E.2d at 888.

insurance in the late 1970s when the loans were made. Therefore, we find the plaintiffs had "reasonable opportunity" to discover the charges for accident and health insurance unlike the plaintiffs in *Hamilton.*

 Plaintiffs also argue that the "continuing" tort doctrine somehow applies in this case, but that argument is likewise groundless. The doctrine of "continuing wrong" applies to continuing "torts," not statutory violations. See *Moor v. Travelers Ins. Co.* (C.A.5, 1986), 784 F.2d 632, 633 (nondisclosure is not a continuing violation for the purpose of statute of limitations). In *Harvey v. Hous. Dev. Corp.* (W.D.Mo.1978), 451 F.Supp. 1198, the court held that defendant's continuing failure to comply with the Truth–In–Lending Act, Section 1635(b), Title 15, U.S.Code, did not toll the statute of limitations. The court stated:

"Acceptance of continuing violation theory would permit an action to be brought at anytime within one year after the last monthly installment payment was made. Applied to a 20 year installment loan for the purchase of real estate it would be possible to sue successfully 21 years after the execution of the loan contract. Such an interpretation seems unreasonable." *Id.* at 1200.

The statutory forfeitures that plaintiffs seek apply only to a particular loan. Under the terms of R.C. 1321.56, the forfeitures would apply only to the specific loan made the subject of that section. The forfeiture is assessed on a loan-by-loan basis.

Finally, we find no merit to plaintiffs' argument that they have presented a common-law fraud claim that is independent of their statutory claim. There is neither legal nor evidentiary support for such a claim.

 When the legislature creates a statutory right unknown to the common law (as it did here, by specifying what charges a finance company might impose on a borrower), complete with meaningful statutory remedies, there can exist no parallel common-law or public policy tort claim. *Franklin Cty. Law Enforcement Assn. v. FOP, Lodge No. 9* (1991), 59 Ohio St.3d 167, 169, 572 N.E.2d 87, 89–90; *Hoops v. United Tel. Co. of Ohio* (1990), 50 Ohio St.3d 97, 101, 553 N.E.2d 252, 256–257; *Patrolmen's Benevolent Assn. v. MetroHealth* (1993), 87 Ohio App.3d 16, 21, 621 N.E.2d 833, 835–836; *Bear v. Geetronics* (1992), 83 Ohio App.3d 163, 168–169, 614 N.E.2d 803, 806–807. As these cases support, where the General Assembly has specified the remedies for violating the MLA, it has preempted the field and a common-law cause of action (*i.e.,* fraud for imposing such charges) may not be implied. There is no legal foundation for plaintiffs' tort claim outside the statutory framework.

 Assuming *arguendo* that plaintiffs could assert a common-law fraud claim independent of the statutory violation, there is no evidence of fraud. In

Ohio, a claim of common-law fraud requires the plaintiff to establish the following elements:

"(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Russ v. TRW, Inc.* (1991), 59 Ohio St.3d 42, 49, 570 N.E.2d 1076, 1083; see, also, *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, paragraph two of the syllabus; *Cohen v. Lamko, Inc.* (1984), 10 Ohio St.3d 167, 169, 10 OBR 500, 501–502, 462 N.E.2d 407, 408–409; *Walter v. Marion Credit Assn.* (1987), 42 Ohio App.3d 215, 537 N.E.2d 676, paragraph two of the syllabus.

Those factual elements cannot be satisfied here. Plaintiffs' allegations of "fraud" essentially assert that the defendants somehow represented the loans to be "lawful" despite the imposition of accident and health insurance. However, under Ohio law, a representation of law is an opinion and cannot form the basis of an action for fraud in the absence of a fiduciary relationship. *Aetna Ins. Co. v. Reed* (1877), 33 Ohio St. 283, 292–294; *Snoderly v. Brown* (App.1949), 56 Ohio Law Abs. 47, 50, 91 N.E.2d 31, 33; *Yendes v. Shaw* (1948), 83 Ohio App. 300, 302, 38 O.O. 384, 385–386, 79 N.E.2d 181, 182. "[T]he relationship of debtor and creditor, without more, is not a fiduciary relationship * * * and, more specifically, * * * a bank and its customers stand at arm's length in negotiating terms and conditions of a loan * * *." *Blon v. Bank One, Akron N.A.* (1988), 35 Ohio St.3d 98, 101, 519 N.E.2d 363, 367–368.

Also, in *Hughes v. Cardinal Fed. S. & L. Assn.* (S.D.Ohio, 1983), 566 F.Supp. 834, 838, in determining whether the savings and loan association violated the Truth–In–Lending Act by not informing borrowers that the interest on loans was variable, the court held:

"The fraudulent concealment doctrine therefore requires more than mere nondisclosure. Otherwise, the one-year statute of limitations would be tolled in almost every Truth–In–Lending action in which a nondisclosure violation was found and the statutory limitations provision would be a nullity."

Such principles must apply here with equal force to the small loan act.

The trial court could properly find that the plaintiffs' allegations of "fraud" were groundless as a matter of law. There was no misrepresentation or concealment of a material *fact* nor reliance thereon, as required for common-law fraud.

Based on the foregoing, we find no error in the trial court's award of summary judgment to defendants nor was there any error in dismissing the state officials from an action that was barred by the statute of limitations.

Plaintiffs' Assignment of Error I is overruled. Summary judgment having been properly granted, the other assignments of error are moot and it is not necessary to address them. App.R. 12(A)(1)(c).

*Judgment affirmed.*

DYKE and NAHRA, JJ., concur.

## APPENDIX

"I. The trial court erred by granting appellees' motion for summary judgment.

"II. The trial court erred in finding ORC 1321.57, effective from November 4, 1976 through September 27, 1979, permitted a registrant under the Ohio Mortgage Loan Act to contract for, charge, and receive sums from a borrower for credit accident and health insurance; and further erred by ruling that other unauthorized charges may be added to loan balances.

"III. The trial court erred in finding opinions of an administrative agency being routinely enforced as unpromulgated rules, may contravene specific statutory limitations set forth in the Ohio Revised Code.

"IV. The trial court erred in permitting the Superintendent and Deputy Superintendent of the state of Ohio, Department of Commerce, Division of Consumer Finance to act in behalf of consumer finance companies and/or their subsidiaries.

"V. The trial court erred in ruling that an administrative agency may retroactively apply a statute to deprive appellants of a substantive statutory right.

"VI. The trial court erred in finding ORC 1321.55(C) constitutional.

"VII. The trial court erred in dismissing defendants Rae Ann Estep, Harold Duryee, and Lee Fisher from the action.

"VIII. The trial court erred in finding a lender may contract to receive a prepayment penalty after expiration of five years from the date of execution of a mortgage.

"IX. The trial court erred in finding the Depository Institutions Deregulation and Monetary Control Act preempts Ohio law where a lender has violated Ohio law restricting prepayment penalties and charged sums which exceed provisions designed to protect borrowers.

"X. The trial court erred by failing to rule on appellants' motions to compel and for sanctions, or require appellee finance companies to produce all documents requested by appellants.

"XI. The trial court erred and denied appellants due process and equal protection of law mandated by the Constitutions of the United States of America and the state of Ohio.

"XII. The trial court erred by failing to order registrants under the Ohio Mortgage Loan Act to pay damages mandated by ORC 1321.56."