DECISION
{¶ 1} Plaintiff-appellant, Mercedes Castillo, appeals from a judgment of the Franklin County Court of Common Pleas which granted a motion for summary judgment in favor of defendants-appellees, Nationwide Financial Services, Inc., and related parties ("Nationwide"), and additionally found moot Nationwide's motion to compel and appellant's motion for class certification. For the reasons stated below, we affirm.
 {¶ 2} Appellant is a senior citizen who came to the United States from her native Equador in the 1970s, obtaining employment in the New York City area as a domestic. In August 1994, she was visiting her local Citibank branch to conduct business when she ran into a friend who suggested she make a retirement investment, and who then took her to Carmen Andrade, who was employed at the bank as a financial consultant for Citicorp Investment Services. Among Andrade's duties was to inform customers about various investment options and to assist them in opening investment accounts. One of these options was a "Best of America" variable rate tax-deferred annuity offered by Nationwide, and sold by Andrade as an authorized agent for Nationwide. With Andrade's assistance, Castillo immediately purchased a $2,000 annuity.
 {¶ 3} In her deposition, Andrade testified that she did not recall any specifics regarding her meeting with Castillo and subsequent sale of the annuity, but that her general practice was to show customers a prospectus and review with them the terms of the investment, answering any questions they may have. She also stated that she was trained to question customers regarding their particular financial circumstances and goals, and to recommend an investment suitable to the individual customer. She could not recall whether appellant asked for an annuity or whether she recommended one, but stated that she would not have signed appellant's application for the annuity if she had not believed this was a suitable investment for appellant.
 {¶ 4} Appellant's deposition reveals that her friend who took her to Andrade, stated: "[L]isten Mechita, this is to do it here," and told Andrade "this is a lady friend of mine who wants to do this," upon which appellant told Andrade she wanted an IRA. (Depo. at 39, 60.) According to appellant, Andrade then assisted her in filling out the forms and removing $2,000 from appellant's bank account in order to purchase an "Individual Retirement Annuity" from Nationwide, and that this process took about 20 minutes. Although appellant was given copies of her application form, disclosure statement and prospectus, she admits she did not read these documents and did not ask any questions prior to signing the application. She said that it was not until early October 1994, when she received the first statement reflecting a decrease in value of her investment, that she realized the annuity was not right for her. At that time, she said she went back to the bank to "have it out" with Andrade, and was told by Andrade, and subsequently by others, that she needed to give the investment more time, and that there would be a penalty if she withdrew the money from the annuity prior to the expiration of seven years. (Depo. at 54.) She stated that when the seven years was up, she redeemed the annuity for $2,734.12. Although she admitted her decision to invest in the annuity was "spur of the moment," she asserted that Andrade did not give her sufficient information about the investment to allow her to make an informed choice, and that Andrade did not attempt to ascertain appellant's financial circumstances or explain the exact nature of the annuity before selling it to her. (Depo. at 127.)[1]
 {¶ 5} Appellant's dissatisfaction with the annuity ultimately led to the October 1998 filing of a complaint against Nationwide. The complaint alleged, inter alia, various fraud claims, breach of fiduciary duty, and negligent misrepresentation, training and supervision of Andrade. Also named as plaintiff in the suit was Marcus Shore, another Nationwide annuity investor, as a part of appellant's effort to obtain class certification allowing participation of similarly-situated individuals who invested to their detriment in Nationwide tax-deferred annuities; however, during the discovery process, Shore sought removal as a party plaintiff, leaving appellant as the sole representative of the proposed class. By motion, over three years after the institution of the action, appellant unsuccessfully sought leave to amend the complaint to add other plaintiffs. A class action was not certified, and the trial court's final appealable order declared moot the motion to certify the class.
 {¶ 6} Appellant's cause of action is based upon her theory that she should not have been sold a tax-deferred annuity because the tax benefit of that investment is redundant in a situation where an investor already has an individual retirement account. She asserts that, had she known this and had she known that a variable rate tax-deferred annuity not only did not give her the maximum investment return but also locked up her money for seven years due to the substantial surrender charges which otherwise would have been assessed, she would not have purchased the annuity.
 {¶ 7} In its November 2002 decision, the trial court granted Nationwide's motion for summary judgment on the basis that appellant failed to raise genuine issues of material fact on her claims. The court reasoned that appellant presented no evidence that Nationwide put the annuity in an individual retirement account or that Nationwide's agent recommended she do so, no evidence of fiduciary duty, and that appellant's signature on the relevant forms indicated she understood the terms of her investment purchase. The trial court also found that the fraud and misrepresentation claims were barred by the statute of limitations.
 {¶ 8} Regarding appellant's claims of negligent training and supervision, and unjust enrichment and constructive trust, the trial court determined that appellant had not demonstrated that Andrade engaged in any illegal conduct, nor did she show that Nationwide made misrepresentations and omissions upon which appellant relied to her detriment. The court also found there was no evidence appellant paid surrender fees or that an underlying deceptive practice occurred.
 {¶ 9} Appellant now assigns the following as error:
1. The trial court erred in granting defendant's motion for summary judgment.
2. The trial court erred or abused its discretion in denying plaintiffs' motion for leave to amend their class action complaint to add three new plaintiffs.
 {¶ 10} Appellate review of summary judgment motions is de novo. Helton v. Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
 {¶ 11} When a motion for summary judgment has been supported by proper evidence, a non-moving party may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing that there is a genuine triable issue. Civ.R. 56(E); Jackson v. Alert Fire Safety Equip., Inc. (1991), 58 Ohio St.3d 48, 52. To establish the existence of a genuine issue of material fact, the non-moving party must do more than simply resist the allegations in the motion. Rather, that party must affirmatively set forth facts which entitle him to relief. Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, 111. If the non-moving party "does not so respond, summary judgment, if appropriate, shall be entered against the party." Civ.R. 56(E).
 {¶ 12} Appellant's first assignment of error asserts that the trial court should not have granted summary judgment in favor of Nationwide because she had, in fact, offered evidence sufficient to overcome the motion. Appellant charges that her deposition alleged Nationwide breached a duty to disclose the tax deferral redundancy, that Andrade recommended a tax-deferred annuity when appellant had asked for an individual retirement account, and that any lack of evidence that the annuity was actually placed in a tax-deferred account was not relevant to her claims that Nationwide breached a duty to disclose the redundancy issue. She also claims that her complaint was not time-barred because the statute of limitations only began to run once she discovered the problem, which occurred several months after the purchase of the annuity.
 {¶ 13} R.C. 2305.09 provides a four-year statute of limitations for relief on the ground of fraud. Claims of accountant negligence and other negligence arising out of financial transactions are also subject to a four-year limit. See Investors REIT One v. Jacobs (1989),46 Ohio St.3d 176, 181. Therefore, under Ohio law, appellant's cause of action must have arisen no more than four years before her action was filed in October 1998.
 {¶ 14} Appellant argues that she did not discover the fraud she is claiming until some time after the purchase of the annuity in August 1994. Thus, she claims the statute was tolled until she discovered the tax deferral redundancy problem, despite the fact that she signed documents acknowledging she understood the terms of the annuity and that she received a prospectus outlining features of the annuity, because even if she had read and understood those documents (which she admits she did not), she could not have discovered the tax-deferral redundancy ramifications until later.
 {¶ 15} In Investors REIT One, the court refused to apply a medical malpractice discovery standard to a case alleging accountant malpractice. This court refused to extend the rule to a case alleging investment advisor negligence. Alton v. Wyland (1991), 72 Ohio App.3d 685,691. Halley v. Ohio Co. (1995), 107 Ohio App.3d 518, held that "[a] claim against an accountant or investment advisor for negligently causing the client to incur tax liabilities accrues when the negligent act was committed, even though the IRS does not assess a tax liability until later." Id. at 526. In Lynch v. Dial Finance Co. of Ohio No. 1, Inc. (1995), 101 Ohio App.3d 742, a case against a finance company alleging violations of a mortgage statute, the court held that the statute of limitations was not tolled by the discovery rule because the wrongful act occurred at the time the statute was violated and not at the time of injury. The court stated that, "[e]ven if `injury' is the triggering mechanism, injury here was virtually simultaneous with the alleged statutory violation because defendant was `overcharged' and started paying the insurance premiums during the course of the [earlier] loans." Id. at 747. Citing to Zimmie v. Calfee, Halter Griswold (1989),43 Ohio St.3d 54, Lynch stated that the statute began to run not at the time the injured party became aware of the full extent of the injury, but, rather, at the time a reasonable person would be aware of a "cognizable event" alerting him to the occurrence of a wrong. Id. at 747. Such "constructive knowledge" was attributed to the plaintiffs in the Lynch case because the disputed charges for insurance were itemized on the face of a loan document signed by the plaintiffs, and what the plaintiffs really discovered at a much later date was that the charges were in violation of a statute.
 {¶ 16} Thus, appellant could be charged with constructive knowledge of all the information contained in the documents she received and/or signed, whether she read them or not. One document states, in part:
 CITICORP INVESTMENT SERVICES CUSTOMER DISCLOSURE AND ANNUITY ACKNOWLEDGMENT
Annuities are not insured by the FDIC, are not deposits or other obligations of, or guaranteed by Citicorp Investment Services, Citibank, or any other federally insured bank. Variable and fixed annuities are subject to various types of risk which may potentially cause a loss of principal. Fixed annuities, however, are not subject to market fluctuations.
Obligations of Insurance Company. I understand the annuity I am purchasing is an obligation of an insurance company.
Agency. Citicorp Investment Services, is acting only as an agent for the insurance company.
* * *
Surrender Charges. Surrender charges may apply upon early withdrawal. Detailed information about applicable surrender charges is in the annuity brochure or the annuity contract and any prospectus.
* * *
Received a Prospectus. If I am purchasing a variable annuity, I acknowledge that I received a copy of its current prospectus.
* * *
By signing below, I confirm that I have read and understood the above.
 {¶ 17} At the bottom of the form is the signature of both appellant and Carmen Andrade, and a date of August 29, 1994. In addition to this document, appellant signed an annuity application form, which gave specific purchase payment allocation information and stated, as follows:
I UNDERSTAND THAT ANNUITY PAYMENTS AND SURRENDER VALUES, WHEN BASED UPON INVESTMENT EXPERIENCE OF A SEPARATE ACCOUNT, ARE VARIABLE AND ARE NOT GUARANTEED AS TO A FIXED DOLLAR AMOUNT. RECEIPT OF A CURRENT VARIABLE ANNUITY PROSPECTUS IS HEREBY ACKNOWLEDGED.
 {¶ 18} Finally, appellant received a prospectus which included a synopsis of the information it contained. This synopsis indicated that no sales charge would be deducted but that, if the contract value of the annuity is surrendered, a contingent deferred sales charge would be deducted, and, in addition, annual charges would be deducted for contract maintenance, administration, mortality risk and expense risk. The synopsis additionally outlined a "ten day free look" policy permitting the contract owner to revoke the contract without penalty within ten days of purchase. Appellant's prospectus also contained a "Variable Annuity Individual Retirement Annuity Disclosure Statement," which further outlined terms specific to the variable rate tax-deferred annuity appellant purchased.
 {¶ 19} Appellant argues it is irrelevant that she signed documents acknowledging her awareness of various annuity facts, because her real problem with the investment was not revealed in any of the documents or by anything Andrade told her. Instead, she argues Nationwide breached a duty to disclose the tax deferral redundancy problem, and that appellant could not have discovered that problem until some time after the purchase was made.
 {¶ 20} Despite the allegations in her complaint, appellant's deposition reveals only that she was dissatisfied with her purchase because the annuity's value fluctuated and because redeeming it early would have subjected her to a penalty. Even if Nationwide did engage in a pattern of practice intended to induce customers to purchase unnecessary or redundant investments, appellant has not presented a genuine issue of material fact as to whether the claimed tax-deferral redundancy resulted in a loss to her personally, because there was no evidence that she already had an individual retirement account or that she otherwise did not need the tax-deferral benefits provided by the annuity. In fact, the evidence showed that she sustained no actual loss because the value of the annuity increased during the seven years she owned it.
 {¶ 21} The trial court did not err in determining appellant's cause of action was time-barred, and, in addition, correctly found that appellant had not raised a genuine issue of material fact as to whether she was injured by any action or omission of Nationwide's. Appellant's first assignment of error is overruled.
 {¶ 22} Appellant's second assignment of error claims the trial court erred in denying her Civ.R. 15 motion to amend the complaint to add plaintiffs. In its May 28, 2002 interlocutory order denying appellant's motion, the trial court determined that appellant could not meet the requirements for amending the complaint because her motion failed to show mistake, that the claims of the proposed plaintiffs arose out of the same conduct, transaction or occurrence as appellant's original claim, that the claims of the proposed plaintiffs related back to the original claim, or that permitting amendment more than three years after the filing of the original complaint would not delay resolution of the case. The court finally determined the proposed plaintiffs would not be prejudiced by denial of the motion because they could still pursue their claims in a separate action.
 {¶ 23} Civ.R. 15(C) provides, in part:
Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. * * *
 {¶ 24} "The primary purpose of Civ.R. 15(C) is to preserve actions which, through mistaken identity or misnomer, have been filed against the wrong person." Littleton v. Good Samaritan Hosp. Health Ctr. (1988), 39 Ohio St.3d 86, 101. Nevertheless, the rule has been used to permit the addition of a plaintiff when the new plaintiff is the real party in interest or when an original plaintiff brings a new cause of action in a different capacity. Id. In the instant matter, the proposed plaintiffs are other investors alleged to be similarly situated; however, as noted by the trial court, "a number of factual differences exist between and among the circumstances surrounding the conduct at issue concerning the proposed plaintiffs and the original plaintiffs — including the sale of different annuities, by different salespeople, in different states." While these differences may not be sufficient to defeat an order certifying a class, see Washington v. Spitzer Mgmt., Inc. (April 3, 2003), Cuyahoga App. No. 81612, following Hamilton v. Ohio Sav. Bank (1998), 82 Ohio St.3d 67, in this case a class has not been certified, thus there is no presumption in favor of adding the proposed plaintiffs.
 {¶ 25} The decision whether to permit the amendment of a complaint rests within the sound discretion of the trial court, and may not be disturbed absent a finding that such decision was arbitrary, unreasonable, or unconscionable. Wilmington Steel Products, Inc. v. Cleve. Elec. Illum. Co. (1991), 60 Ohio St.3d 120, 122. In this case, the proposed plaintiffs were not originally omitted due to any mistake or inadvertence, but admittedly were not discovered until some time after the filing of appellant's complaint and were sought to be added in order to improve appellant's chances of obtaining class certification. Moreover, the claims of the proposed plaintiffs did not arise out of the same conduct, transaction or occurrence as appellant's claims, but arose out of separate transactions in different states at different times involving different agents. Finally, prejudice to Nationwide may have resulted from the further delay of a resolution of the case, and from having to defend against new plaintiffs having different circumstances, with a concurrent lack of prejudice to the proposed plaintiffs on the basis that their causes of action could still be filed separately.
 {¶ 26} The court was within its discretion to withhold a decision about the class certification question until after granting summary judgment. A court may defer a class certification question until after deciding the defendant's motion for summary judgment, thus "winnow[ing] out substantively deficient class actions, prior to class certification." Thomas v. Moore U.S.A., Inc. (S.D.Ohio 1999), 194 F.R.D. 595, at 603, following Thompson v. County of Medina, Ohio (C.A. 6, 1994), 29 F.3d 238, and 7B Charles Arthur Wright, Arthur R. Miller Mary Kay Kane, Federal Practice and Procedure (1986), Section 1785, at 127-128. In Kolar v. Ohio Cas. Group (Nov. 9, 2000), Cuyahoga App. No. 77240, the court indicated that, where a change in the law mooted the claims of the named plaintiff, such that summary judgment in favor of defendant was warranted, the certification question became moot as well, since there remained "`no plaintiff (either named or unnamed) who can assert a justiciable claim against any defendant and consequently there is no longer a `case or controversy.'" Id., citing Lusardi v. Xerox Corp. (1992), 975 F.2d 964. Thus, the trial court was permitted to declare moot appellant's attempt to obtain class action status once the court determined the underlying cause of action was meritless. The trial court did not err in denying appellant's attempts to add plaintiffs and certify the class, and so we overrule appellant's second assignment of error.
 {¶ 27} For the foregoing reasons, appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
KLATT and DESHLER, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] The record from the common pleas court indicates that a transcript of the deposition of Mercedes Castillo was filed in this matter but that the transcript could not be located at the time the record was transferred to the court of appeals clerk's office. In addition, the common pleas court record does not indicate that the transcript of the deposition of Carmen Andrade was ever filed; however, the trial court referenced portions of that transcript in its decision. The parties were contacted regarding these issues, and appellant's counsel provided a copy of the transcripts of both depositions to this court. Appellee was given an opportunity to stipulate that the copies of these transcripts were accurate, but, as of the time of the release of this decision, had not provided the court with a stipulation. Because the trial court relied upon both of these transcripts in rendering its decision, appellee will be deemed to have waived objection to the content of the copies of the transcripts provided by appellant.