[Cite as *Carrick v. Deadman*, 2023-Ohio-4295.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Andrew J. Carrick, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 22AP-556 |
| v. | : | (C.P.C. No. 21CV-000729) |
| William Deadman, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on November 28, 2023

**On brief:** *Bruce M. Broyles*, for appellant. **Argued:** *Bruce M. Broyles.*

**On brief:** *Arnold & Clifford LLP, James E. Arnold*, and *Damien C. Kitte*, for appellee. **Argued:** *Damien C. Kitte.*

APPEAL from the Franklin County Court of Common Pleas

BOGGS, J.

{¶ 1} Plaintiff-appellant, Andrew J. Carrick ("Carrick"), appeals the judgment of the Franklin County Court of Common Pleas, granting a motion for summary judgment filed by defendant-appellee, William Deadman ("Deadman"). For the reasons herein, we affirm the trial court's judgment.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2} This matter arises out of a breach of trust complaint filed by Carrick against Deadman, who is the trustee of the Eleanor Smith Carrick Irrevocable Trust ("the Trust"), dated December 21, 1983. The beneficiaries of the Trust are Eleanor Smith Carrick's children: Andrew J. Carrick, Brenda Neil, and Roxanna Deadman. William Deadman, the Trustee, is Roxanna Deadman's husband. The Trust's assets consist of Limited Partnership Units in a company called Kents Run Partnership Ltd. ("Kents Run") as well as separate

funds for each of the three beneficiaries. Prior to the creation of the Trust, Eleanor Smith Carrick held all the partnership units of Kents Run and intended to contribute her partnership units to the trust through periodic transfers, which she successfully did prior to her death in 2006. (Deadman Aff. at ¶ 13-14, 29.) The units and distributions of the Trust were to be equally distributed amongst her children, with 0.27 percent to be given to the Trustee. *Id.*

{¶ 3} Deadman claims that over the course of several decades, Carrick received dozens of checks, amounting to over $425,000, from his separate fund within the Trust. (Dec. 9, 2021 Mot. for Summ. Jgmt. at 3.) Deadman produced blank and "voided" checks which indicated the payor as "Eleanor S. Carrick Trust, DTD 12/21/83, William G. Deadman TTEE, Andrew J. Carrick Fund, 3881 Criswell Drive, Columbus, OH 43220-4935," and to the best of Deadman's knowledge the checks issued to Carrick contained that same "Payor" information. (Deadman Aff. at ¶ 24, Ex. 1 attached to Dec. 9, 2021 Mot. for Summ. Jgmt.) Carrick also received a check from a settlement that Kents Run entered into in 2002. The settlement from Kents Run to the Trust resulted in a deposit of $293,639.31 into Carrick's fund within the Trust. (Deadman Aff. at ¶ 27.) Shortly thereafter Carrick requested a withdrawal of $204,170.64, and Deadman hand-delivered a check to Carrick. *Id.* at ¶ 28-29. In March 2013, the final check to Carrick from the Trust was written, and the last record of Carrick's fund, from September 2021, showed the balance almost depleted at $109.37. *Id.* at ¶ 33, 37.

{¶ 4} On February 4, 2021, Carrick filed a complaint against Deadman alleging that he engaged in self-dealing, an act of dishonesty and a willful breach of trust. In his complaint, Carrick alleged that, despite his repeated requests, he did not receive a copy of the trust agreement from Deadman until November 2020, that he has not received required distributions, that he has not received a list of the Trust's current assets, and that Deadman has failed to maintain accurate records and failed to give Carrick notice of his power to withdraw funds from the Trust on an annual basis. (Feb. 4, 2021 Compl. at 2-3.)

{¶ 5} Carrick's complaint requested various forms of relief, which included: enjoining Deadman from committing a further breach of trust, requiring Deadman to account for the assets and finances of the Trust, awarding compensatory damages to Carrick equal to the profit Deadman made by the alleged breach of trust and self-dealing,

removing Deadman as Trustee of the Trust and appointing a special fiduciary. (Compl. at 4-5.)

**{¶ 6}** On August 13, 2021, Carrick filed a motion to compel discovery, alleging that Deadman did not provide complete responses to Carrick's interrogatories.

**{¶ 7}** On December 9, 2021, Deadman filed a motion for summary judgment, arguing there were no genuine issues of material fact regarding Carrick's claims and that the complaint should be dismissed in its entirety. In his motion for summary judgment, Deadman argued that the evidence shows that Carrick's claims are barred by the statute of limitations, that Carrick depleted his funds from the Trust, that Carrick presented no evidence of self-dealing by Deadman, and that Carrick, by his own admission, has suffered no damages from the claimed breach of trust. (Mot. for Summ. Jgmt. at 1.)

**{¶ 8}** Carrick responded to Deadman's motion for summary judgment by again arguing that Deadman committed a breach of trust by failing to provide annual written reports and annual written accounts. (Jan. 20, 2022 Pl.'s Resp. to Mot. for Summ. Jgmt. at 2.) Carrick further argued that his claims were not barred by the statute of limitations because "[b]eneficiaries cannot be expected to know this statutory duty [to provide annual reports] imposed upon Trustees" and therefore the statute of limitations had not begun to run. *Id*. at 4. In a supplemental reply to the motion for summary judgment, Carrick argued that, because he did not receive a copy of the trust agreement until November of 2020, "[he] could not have known of any potential breach of the provisions of the trust agreement until he had access to [it]." (Feb. 9, 2022 Mot. for Leave to File, Surreply at 5.)

**{¶ 9}** On June 29, 2022, Carrick filed a supplemental response to the motion for summary judgment in which he submitted copies of 16 checks that were made out to Deadman from the Willowbrook Coal Company which coincided with deposits made into Carrick's fund within the Trust. Carrick contends that Deadman mischaracterized those checks as contributions by Eleanor S. Carrick rather than from Willowbrook Coal Company.

**{¶ 10}** On March 30, 2022, the trial court denied Carrick's motion to compel, based on its finding that the parties had not made a good-faith effort to resolve their dispute without court assistance. (Order & Entry Pl.'s Mot. to Compel and Def.'s Mot. for a Protective Order at 4.) The trial court found that Carrick had only provided evidence of two

letters he had sent to Deadman's counsel, to which Deadman's counsel responded in a reasonable time. *Id.* at 2.

{¶ 11} On July 15, 2022, Carrick filed a second motion to compel discovery, requesting that the court compel Deadman to fully answer interrogatories and respond to requests for production of documents, namely the entirety of the Trust's brokerage statements, including the statements to the other beneficiaries, and any documents evidencing contributions made to the Trust.

{¶ 12} On August 2, 2022, Carrick filed a second supplemental response to Deadman's motion for summary judgment, arguing that documents he had recently and independently obtained from Columbia Portland Cement Company should have been produced by Deadman in discovery and that he could have used those documents to support his arguments against summary judgment.

{¶ 13} On August 19, 2022, the trial court granted summary judgment for Deadman, holding that Carrick's claims were barred by the statute of limitations, that the trust agreement limited the trustee's liability, that there was no evidence of self-dealing by Deadman, and that Carrick did not establish that he was injured by not receiving trust reports. (*See* Aug. 19, 2022 Order & Entry on Def.'s Mot. for Summ. Jgmt, Pl.'s Mot. for Leave to File Supp. Resp., and Pl.'s Second Mot. to Compel.)  On September 14, 2022, Carrick filed his notice of appeal to this court.

## II.  ASSIGNMENTS OF ERROR

{¶ 14} Carrick raises eight assignments of error as follows:

> [1.] The trial court abused its discretion in denying the second motion to compel filed by appellant Andrew Carrick.
>
> [2.] The trial court erred in finding that Andrew Carrick had knowledge of the Eleanor Smith Carrick irrevocable trust agreement dated the 21st of December 1983 based upon the execution of a waiver of notice dated December 27, 1983 or January 1, 1984.
>
> [3.] The trial court erred in finding that Andrew Carrick had knowledge of the Eleanor Smith Carrick irrevocable trust agreement dated the 21st of December 1983 based upon the payor information on the Paine Weber check.

[4.] The trial court erred in granting summary judgment on appellant's breach of trust claims based upon the statute of limitations.

[5.] The trial court erred in granting summary judgment based upon its finding that William Deadman met his initial burden of establishing an absence of a genuine issue of material fact that he did not engage in any activity that would constitute negligence, dishonesty, or a willful breach of trust.

[6.] The trial court erred in granting summary judgment based upon its finding that appellant Andrew Carrick did not meet its reciprocal burden of producing evidence demonstrating a genuine issue of material fact.

[7.] The trial court erred in granting summary judgment when a genuine issue of material fact remained in dispute as to William Deadman's "own negligence, dishonesty, or willful breach of trust."

[8.] The trial court erred in granting summary judgment based upon the statute of limitations when Andrew Carrick did not receive a copy of the Eleanor Smith Carrick irrevocable trust agreement dated the 21st day of December 1983 until 2020.

## III. ANALYSIS

### A. Assignments of Error Related to the Motion for Summary Judgment

{¶ 15} Because they are dispositive, we first turn to Carrick's second, third, fourth, fifth, sixth, seventh, and eighth assignments of error, all of which relate to the trial court's granting of Deadman's motion for summary judgment and its determination that Carrick's claims are barred by the statute of limitations.

{¶ 16} We review a decision on a motion for summary judgment under a de novo standard. *LRC Realty, Inc. v. B.E.B. Properties*, 160 Ohio St.3d 218, 2020-Ohio-3196, ¶ 11. De novo appellate review means the court of appeals conducts an independent review, without deference to the trial court's decision. *Wiltshire Capital Partners v. Reflections II, Inc.*, 10th Dist. No. 19AP-415, 2020-Ohio-3468, ¶ 12. Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could

come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations. Bd.*, 78 Ohio St.3d 181, 183 (1997). In ruling on a motion for summary judgment, the court must resolve all doubts and construe the evidence in favor of the nonmoving party. *Premiere Radio Networks, Inc. v. Sandblast, L.P.*, 10th Dist. No. 18AP-736, 2019-Ohio-4015, ¶ 6.

{¶ 17} Deadman moved for summary judgment based upon the statute of limitations for a breach of trust claim. (Dec. 9, 2021 Mot. for Summ. Jgmt. at 6-9.) R.C. 5810.05(C) sets a four-year statute of limitations for claims by a beneficiary of a trust against a trustee for a breach of trust.

> [A] judicial proceeding by a beneficiary against a trustee for breach of trust must be commenced within four years after the first of the following to occur:
>
> (1) The removal, resignation, or death of the trustee;
>
> (2) The termination of the beneficiary's interest in the trust;
>
> (3) The termination of the trust;
>
> (4) The time at which the beneficiary knew or should have known of the breach of trust.

Deadman contends that Carrick filed his claims for breach of trust more than four years after he knew, or should have known, of the alleged breaches and that his claims are therefore time-barred.

{¶ 18} While Carrick claims he was not aware of the Trust until he received a copy of the trust agreement in 2020, the evidence in the record shows Carrick knew or should have known of the Trust's existence at or soon after its creation. "[*C*]*onstructive* knowledge of facts, rather than *actual* knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule." (Emphasis sic.) *Cundall v. U.S. Bank*, 122 Ohio St.3d 188, 2009-Ohio-2523, ¶ 30, quoting *Flowers v. Walker*, 63 Ohio St.3d 546, 549 (1992). In this respect, " '[i]gnorance of the law does not toll the statute of limitations.' " *Cain v. Panitch*, 10th Dist. No. 16AP-758, 2018-Ohio-1595, ¶ 47, quoting *Al-Mosawi v. Plummer*, 2d Dist. No. 24985, 2012-Ohio-6034, ¶ 23, citing *Lynch v. Dial Fin.*

*Co.*, 101 Ohio App.3d 742, 748 (8th Dist.1995). Rather, "[i]t is ignorance of facts that provides relief." *Id.*

{¶ 19} In his second and third assignments of error, Carrick takes issue with the court determination he had constructive knowledge of the Trust based on waivers he signed and his acceptance of checks from his fund in the Trust. Between December 1983 and January 1984, Carrick signed a series of documents entitled "waivers of notice regarding his right to withdraw funds from the Trust." Carrick argues that these waivers "did not properly identify the trust," as they named the "Eleanor Smith Carrick Irrevocable *Family* Trust" rather than the "Eleanor Smith Carrick Irrevocable Trust." (Emphasis added.) (Appellant's Brief at 34-35.) In support of his claimed confusion, however, Carrick does not provide evidence of another trust, let alone one with a nearly identical name, that was executed on the same date as the "Eleanor Smith Carrick Irrevocable Trust," and for which Deadman served as the Trustee. While we must make all reasonable inferences in favor of the nonmovant, we are not bound to make *unreasonable* inferences in Carrick's favor, as he urges us to do so here. *See Gon v. Dick Clark's Am. Bandstand & Grill*, 10th Dist. No. 96APE07-910, 1997 Ohio App. LEXIS 534 (Feb. 11, 1997).

{¶ 20} Carrick also argues that the trial court erred in construing the checks he received as constructive notice of the Trust. Carrick argues that the voided checks submitted by Deadman did not identify the Trust in the payor section of the actual check. (Appellant's Brief at 36.) Specifically, Carrick argues that, viewing the evidence in a light most favorable to Carrick, the payor information on the voided checks should not have made Carrick aware of the Trust. *Id.* Again, this would be an unreasonable inference for the court to make. The voided checks specifically identify "Eleanor S. Carrick Trust DTD 12/21/83 William G. Deadman Trustee Andrew J. Carrick Fund" and gave Carrick at least constructive notice of the existence of the Trust. Accordingly, we overrule Carrick's second and third assignments of error.

{¶ 21} We now turn to Carrick's fourth and eighth assignments of error. Carrick argues that he could not have known of a breach of trust by Deadman until he received a copy of the Trust agreement in 2020. Here, Carrick misses the point. To determine the start of the statute of limitations, this court does not look to when the plaintiff receives trust documentation and understands the legal theories that would support a claim against a

trustee. Instead, we look to when the beneficiary is aware of the facts that would give them notice of a breach of trust. *Cundall* at ¶ 27. " 'If the trustee violates one or more of his obligations to the beneficiary * * *, there obviously is a cause of action in favor of the beneficiary and any relevant Statute of Limitations will apply from the date when the beneficiary knew of the breach or repudiation, or by the exercise of reasonable skill and diligence could have learned of it.' " (Footnotes omitted and emphasis added.) *Id*. at ¶ 28, quoting George Gleason Bogert, *The Law of Trusts and Trustees*, Section 951 at 630-34 (2d Ed.Rev.1995).

{¶ 22} As we have already discussed, Carrick was aware or should have been aware of the existence of the Trust. We must then look to when Carrick would have had constructive knowledge of facts that, with the exercise of reasonable skill and diligence, would alert him to a breach of trust by Deadman. On March 1, 2013, a final check of $1,064 was written to Carrick. (Deadman Aff. at ¶ 37.) Deadman alerted Carrick that $100 needed to remain in the brokerage account for it to remain open; Carrick's fund at that time had $100.40 remaining. *Id*. at ¶ 41.

{¶ 23} We agree with the trial court that, by that date, Carrick had constructive knowledge of facts, namely the depletion of his fund within the Trust, that should have alerted him of any potential breach of trust by Deadman and to start the clock on the statute of limitations. Beneficiaries may not ignore such facts to evade the running of the statute of limitations. "Charging beneficiaries with knowledge of publicly available information or information obtained through minimum investigation prevents them from 'bury[ing] their head in the sand' with matters affecting an inheritance or expectancy." *Zook v. JP Morgan Chase Bank Natl. Assn.,* 10th Dist. No. 15AP-750, 2017-Ohio-838, ¶ 41, quoting *Gracetech Inc. v. Perez,* 8th Dist. No. 96913, 2012-Ohio-700, ¶ 16, fn. 3. We therefore overrule Carrick's fourth and eighth assignments of error.

{¶ 24} In his fifth, sixth, and seventh assignments of error, Carrick argues that the trial court improperly applied the parties' respective burdens on summary judgment. Carrick contends that he established a genuine issue of material fact as to whether Deadman committed a breach of trust. Pursuant to Civ.R. 56(C), the party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record demonstrating the absence of a

genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party cannot satisfy this initial burden by simply making conclusory allegations, but instead must demonstrate, including by use of affidavit or other evidence allowed by Civ.R. 56(C), that there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Wiltshire Capital Partners*, 2020-Ohio-3468, at ¶ 13. If the moving party fails to satisfy this initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies the initial burden, the nonmoving party has a burden to respond, by affidavit or otherwise as provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Dresher* at 293; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991).

**{¶ 25}** Carrick argues that Deadman did not put forth any evidence to meet his burden to show that he did not engage in any activity constituting a breach of trust. Our review of the record, however, indicates that upon filing his motion for summary judgment, Deadman provided brokerage statements of Carrick's fund in the Trust. As we have noted, these statements support the trial court's finding that Carrick's claims are barred by the statute of limitations because there has been no activity in Carrick's fund since it was nearly depleted in 2013.

**{¶ 26}** Further, we do not agree with Carrick that the trial court erred in granting summary judgment based on evidence Carrick provided in response to Deadman's motion. Carrick points us to a series of checks from Willowbrook Coal Company to support his contention he has met his reciprocal burden showing a genuine issue for trial. Carrick argues that the Willowbrook Coal Company checks demonstrate, through a series of inferences, that Deadman was self-dealing by depositing those checks into Carrick's fund in the Trust, rather than giving those checks directly to Carrick. (Appellant's Brief at 47.)

**{¶ 27}** We note, however, that the Willowbrook Coal Company checks date back to the 1990s. As we have already determined, the statute of limitations began to run on Carrick's claims in 2013 at the latest, effectively barring Carrick's claims, including claims based on the evidence like the Willowbrook Coal Company checks that he submitted in response to Deadman's motion for summary judgment. Notably, Carrick does not offer any evidence to refute when he had constructive notice of facts of a potential breach of trust to

start the running of statute of limitations. We therefore overrule Carrick's fifth, sixth, and seventh assignments of error.

### B. Assignment of Error on Carrick's Second Motion to Compel

{¶ 28} In his first assignment of error, Carrick asserts that the trial court erred in denying his second motion to compel discovery. However, having found that Carrick's claims are barred by the statute of limitations, we overrule his first assignment of error as moot.

## IV. CONCLUSION

{¶ 29} Having overruled all of Carrick's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

MENTEL and LELAND, JJ., concur.

————————