[Cite as *Rutan v. Kelly*, 2025-Ohio-4765.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

DENISE RUTAN ET AL.,

Plaintiffs-Appellants,

v.

RONALD KELLY ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 CO 0005

---

Civil Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2023 CV 435

**BEFORE:**
Cheryl L. Waite, Mark A. Hanni, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Frank J. Witschey,* Witschey, Witschey & Firestine Co., LPA, *Atty. Christopher J. Van Blargan*, Kisling, Nestico & Redick, LLC, and *Atty. Nomiki P. Tsarnas*, Kisling, Nestico & Redick, LLC, for Plaintiffs-Appellants

*Atty. Scott C. Essad*, for Defendants-Appellees Ronald Kelly, Erin Kelly Miller, Amanda Fry, Cheryl Pierce, David Pierce, Yellow Creek Casting Co. Inc., Jeannie Parker, Emmet Hughes and Sandra Kelly Hughes.

*Atty. Matthew M. Ries*, Harrington, Hoppe & Mitchell, Ltd., for Defendant-Appellee Byler, Wolfe, Lutsch, Kampfer, CPAs, Inc.

*Atty. David S. Barbee* and *Atty. Robert Buch*, Roth, Blair, Roberts, Strasfeld & Lodge LPA, for Defendant-Appellee Dan Wolfe.

Dated: October 10, 2025

———————————

**WAITE, J.**

**{¶1}** This case involves a complaint filed in the general division of the Columbiana County Court of Common Pleas for fraud, conversion, misappropriation, undue influence, conspiracy, and intentional interference with expectancy of inheritance ("IIEI"). Appellants/Plaintiffs Denise Rutan and Danny Kelly were named in the will of their mother Lois Kelly who died in 2019. Lois was preceded in death by her husband Gerald, who died in 2014. Appellants claim that their siblings, as well as other defendants connected to a family business, squandered their parents' personal and business assets, and in doing so deprived Appellants of any inheritance from their parents. The factual underpinning of all the claims is an allegedly fraudulent transfer in 2010 of shares of stock of the family business. The defendants to the trial action filed motions for summary judgment, and Appellants responded. The court characterized all of Appellants' causes of actions as arising from fraud, and the court granted Appellees' (who are Appellants' siblings) motions for summary judgment on the ground that the four-year statute of limitations for fraud found in R.C. 2305.09(C) had expired prior to the filing of the 2023 lawsuit. The court also held that, although the discovery rule for fraud contained in R.C. 2305.09(E) applied, Appellants discovered or should have discovered the alleged fraud by at least 2014, thus, the statute of limitations expired in 2018.

**{¶2}** Appellants raise three arguments on appeal. First, they contend that the court failed to apply a reasonable person standard in its application of the discovery rule.

They claim that a reasonable person would not have discovered the fraud until 2019, after their mother died and they found out they would not receive an inheritance from either parent. The standard for applying the discovery rule for fraud is that the statute of limitations begins to run when the plaintiff discovered or should have discovered the alleged injury. The trial court correctly applied this rule based on the allegations of fraud that Appellants admittedly knew as early as the 1990s and were thoroughly aware of by 2014. Applying the discovery rule, the statute of limitations for fraud began to run at least by 2014, and Appellants' 2023 complaint is time barred.

{¶3} Second, Appellants argue that they did not have standing to file an IIEI action until 2019 when Lois died, so their causes of action were not ripe until 2019. They argue that the statute of limitations could not have started to run until standing and ripeness were both satisfied. This argument, however, was not made to the trial court and is waived.

{¶4} Third, Appellants argue that counts eight and nine of the complaint should not have been dismissed because they were independent of the the other counts. The record shows that counts eight and nine were dependent on the court making particular findings in the first seven counts, and because the first seven counts were appropriately dismissed due to the running of the statute of limitations, the court properly dismissed counts eight and nine as well. The court correctly granted summary judgment to Appellees, and the judgment is affirmed.

<u>Facts and Procedural History</u>

{¶5} The Plaintiffs/Appellants in this case are siblings Denise Rutan ("Denise") and Danny Kelly ("Danny"). Defendants/Appellees Ronald Kelly, Cheryl Pierce, Sandra Kelly Hughes, and Jeannie Parker are also siblings. The parents of these six siblings

were Gerald Kelly ("Gerald") and Lois Kelly ("Lois"), who died in 2014 and 2019 respectively.

{¶6} Gerald and Lois were founders of a company called Yellow Creek Casting Co., Inc. ("YCC") in Wellsville, Ohio, a cast-iron and steel manufacturing business. They each owned one-half of the total 750 shares of common stock. In addition to Appellants' siblings, YCC and persons who worked for it are also Appellees in this matter.

{¶7} Appellant Danny resided primarily in the State of New York since first moving there in 1971. In the mid 1990s, he commuted from New York to work at YCC and also ran a foundry located across the street from YCC. While working at YCC, Danny became versed in both the production side of the business as well as the financial side. In 1992 Danny intended to buy the assets of YCC and reincorporate under a new name. He was encouraged to do this by Lois, but Gerald did not approve of Danny's plan. In 1997 Danny stopped working at YCC altogether. After he left YCC, Danny had very little contact with his parents.

{¶8} While working at YCC in the 1990s, Danny uncovered questionable activities taking place in the business. He described his sister Cheryl Pierce and her husband David Pierce as "no show" employees, and he fired them. He also suspected Sandra Kelly Hughes, who began working at YCC in 1995, of engaging in financial misconduct.

{¶9} Appellant Denise Rutan was employed at YCC for a brief period in the 1980s. In 2007 she did some cleaning work at YCC. In 2010, Denise spoke with Gerald about his concerns that the company should have been making more money. She suggested that the company books be audited. Gerald and Lois agreed, but the audit did not take place. At some point in 2010, Gerald told Denise that the common shares of

stock would be equally transferred to her siblings Cheryl Pierce, Sandra Kelly Hughes, and Ronald Kelly. The other three siblings would receive no common stock. After 2010, Gerald and Lois were no longer listed in the corporate records or tax filings as shareholders, and they were not paid salaries, bonuses, or dividends.

{¶10} In 2012, Sandra Kelly Hughes discussed with Denise the common stock transfer. Sandra Kelly Hughes started working at YCC in the 1990s, became the office manager, and left in 2012. Also in 2012, Denise obtained shares of preferred stock in the company. She was later told by Appellee Dan Wolfe, a CPA who performed services for YCC, that the preferred shares were worthless and would not generate dividend payments. At about that same time, Sandra Kelly Hughes told Appellant Danny about the stock transfer and that Dan Wolfe was involved in the stock transactions.

{¶11} During 2012, Sandra Kelly Hughes told Appellant Denise that she had been keeping two sets of accounting books at YCC, and that Gerald was only shown one set of books. Sandra Kelly Hughes opined that if Gerald knew how much money the company had been making, he would have taken that money out of the company. Sandra Kelly Hughes also told Denise that improper tax documents were prepared, assets were concealed, and company records were altered. Denise learned that Sandra Kelly Hughes was ousted from her job at YCC in 2012, despite being a major shareholder. Denise learned that her siblings were allegedly converting YCC funds for personal use, and personal expenses were being charged to the company. Denise suspected at that time that Sandra Kelly Hughes was also likely involved in the conversion of YCC funds and assets.

{¶12} In Denise's deposition, she admitted that in 2012 Sandra Kelly Hughes confessed to these bad acts in writing. The confession includes details of alleged

misappropriation of funds by Sandra Kelly Hughes, Cheryl Pierce, and Ronald Kelly. Appellant Danny received the same information by email. He referred to Appellees' activities as embezzlement.

{¶13} In 2013, Appellant Danny had a conversation with Gerald and Lois regarding obtaining a loan from them. They told him at that time they had no money and that Jeannie Parker was in charge of their finances.

{¶14} In 2014, Appellant Denise learned that her siblings were allegedly emptying their parents' bank accounts. This information again came from Sandra Kelly Hughes. Denise testified that she tried to stop her siblings from draining the accounts prior to Lois's death in 2019.

{¶15} On October 14, 2014, Appellant Denise purchased one-half of Sandra Kelly Hughes' stock in YCC for $1. The sales agreement stated that Hughes owned 50% of the YCC stock, thus making Denise a 25% owner. Denise never discussed this stock purchase with Gerald or Lois, or with Appellee Wolfe. It was not until 2023 that Denise first asked the YCC Board of Directors to honor her ownership interest.

{¶16} Appellants' complaint alleges that Gerald Kelly died testate on December 16, 2014 and Lois Kelly died testate on December 1, 2019. Appellants allege that Gerald's will was not admitted to probate, and the primary or sole beneficiary was Lois Kelly. They allege that Lois's will was dated December 30, 2014 and was likewise not admitted to probate, and that all six of her children, including Appellants, are listed as beneficiaries of the will. These allegations are not disputed.

{¶17} Appellants filed a complaint in the Columbiana County Court of Common Pleas General Division on July 31, 2021 ("2021 complaint"). It named 20 defendants and contained claims of interference with inheritance, conversion, fraud, conspiracy, and a

request for an accounting. The complaint was extensively litigated and entered the summary judgment stage, but was voluntarily dismissed with prejudice on July 28, 2023.

{¶18} On September 22, 2023, Appellants filed a second complaint in the Columbiana County Court of Common Pleas General Division ("2023 complaint"). This complaint contained somewhat different defendants, contained modified allegations, and sets forth additional factual circumstances. It named seventeen defendants, some of which were not named in the 2021 complaint, such as YCC.

{¶19} The 2023 complaint has nine counts: (1) intentional interference with inheritance; conversion and misappropriation; (2) intentional interference with expectancy of inheritance: fraud; (3) intentional interference with expectancy of inheritance: illegality of transaction; (4) undue influence; (5) alteration of documents; (6) conspiracy; (7) request for accounting; (8) declaratory judgment; and (9) conversion of stock and capital account.

{¶20} On October 25, 2023, Appellees Sandra Kelly Hughes and Emmet Hughes filed a motion to dismiss. The remaining defendants followed with their own motions to dismiss. On March 13, 2024, the trial court denied the motions to dismiss, and in a lengthy judgment entry ruled that the general division of the court, rather than the probate division, had jurisdiction over the complaint. The court ruled that dismissal under Civ.R. 12(B)(1) for lack of subject matter jurisdiction was not appropriate as the actual nature and essential character of Appellants' complaint was fraud, and that Appellants "do not dispute this characterization of their claims." The court cited Appellants' brief in opposition to the motions to dismiss: "Plaintiffs' primary and core causes of action in this case center on Defendant's attempts to defraud and otherwise illegally cause decedents to transfer their stock shares to the Defendants, Sandra Kelly Hughes, Ronald Kelly, and Cheryl Pierce." (12/15/23 Brief in Opposition, p. 2). The next sentence of the brief in opposition states:

Case No. 25 CO 0005

"The primary causes of action allege those stock transfers never happened." (12/15/23 Brief in Opposition, p. 2-3). The court determined that the complaint was divided into claims of intentional interference with expectancy of inheritance through conversion, misappropriation, fraud, illegal transaction, undue influence, fraudulent alteration of documents, conspiracy, and fraudulent conversion of stock and capital account. The trial court held that, as a matter of law, these causes of action were governed by the four-year statute of limitations for fraud pursuant to R.C. 2305.09. The court also held that the discovery rule for fraud in R.C. 2305.09(E) applied, and that there were factual matters in dispute that prevented dismissal under Civ.R. 12(B)(6).

{¶21} On May 10, 2024, Appellees Sandra Kelly Hughes and Emmet Hughes filed a motion for summary judgment. The remaining defendants then filed their own summary judgment motions. The depositions of Appellants Danny Kelly and Denise Rutan were made part of the record in support of the motions, along with depositions from many other defendants.

{¶22} On February 20, 2025, the court filed a judgment entry granting summary judgment to all defendants on the first seven counts in the complaint, on the basis that the statute of limitations for fraud had expired at the latest by 2018, long before the 2023 complaint was filed. The judgment entry sets forth an extensive factual exposition citing to Appellants' deposition and other evidence of record showing that Appellants knew or should have known the basis for all seven causes of action by 2014, at the latest.

{¶23} Appellants filed a notice of appeal on March 21, 2025. On March 25, 2025 Appellants filed a motion for stay and limited remand for the trial court to clarify whether its ruling included counts eight and nine of the complaint. We granted the motion and remanded the case for the limited purpose of clarifying the disposition of counts eight and

nine in the final judgment entry. On April 30, 2025, the trial court issued another judgment entry holding that counts eight and nine sprang from the first seven causes of action. The court held that counts eight and nine were moot after the dismissal of the first seven claims, or in the alternative were barred by the four-year statute of limitations for fraud. The appeal was returned to active status and Appellants filed their brief. Three different Appellee briefs were filed. Appellants filed a single reply brief. Appellants assert three assignments of error.

Summary Judgment Standard

**{¶24}** An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603 (8th Dist. 1995).

**{¶25}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting

forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386 (8th Dist. 1997).

{¶26} The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327. A party cannot create a genuine issue of material fact by ignoring or contradicting their own deposition testimony. *Byrd v. Smith*, 2006-Ohio-3455, ¶ 28 (a party's affidavit that contradicts their deposition testimony does not create a genuine issue of material fact); *Isaac v. Alabanza Corp.*, 2007-Ohio-1396, ¶ 41 (7th Dist.) (self-contradictory statements by the plaintiff in a deposition cannot be used to overcome defendant's motion for summary judgment).

<u>ASSIGNMENT OF ERROR NO. 1</u>

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON DENISE AND DANNY'S CLAIMS OF INTENTIONAL INTERFERENCE WITH EXPECTANCY OF INHERITANCE ASSERTED IN THE FIRST THROUGH SIXTH CAUSES OF ACTION AND FINDING THEY WERE BARRED BY APPLICABLE STATUTES OF LIMITATIONS WHERE, CONTRARY TO THE COURT'S RULING, REASONABLE MINDS COULD