[Cite as *Rutan v. Kelly*, 2025-Ohio-4765.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

DENISE RUTAN ET AL.,

Plaintiffs-Appellants,

v.

RONALD KELLY ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 CO 0005

---

Civil Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2023 CV 435

**BEFORE:**
Cheryl L. Waite, Mark A. Hanni, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Frank J. Witschey,* Witschey, Witschey & Firestine Co., LPA, *Atty. Christopher J. Van Blargan*, Kisling, Nestico & Redick, LLC, and *Atty. Nomiki P. Tsarnas*, Kisling, Nestico & Redick, LLC, for Plaintiffs-Appellants

*Atty. Scott C. Essad*, for Defendants-Appellees Ronald Kelly, Erin Kelly Miller, Amanda Fry, Cheryl Pierce, David Pierce, Yellow Creek Casting Co. Inc., Jeannie Parker, Emmet Hughes and Sandra Kelly Hughes.

*Atty. Matthew M. Ries*, Harrington, Hoppe & Mitchell, Ltd., for Defendant-Appellee Byler, Wolfe, Lutsch, Kampfer, CPAs, Inc.

*Atty. David S. Barbee* and *Atty. Robert Buch*, Roth, Blair, Roberts, Strasfeld & Lodge LPA, for Defendant-Appellee Dan Wolfe.

Dated: October 10, 2025

_____

**WAITE, J.**

**{¶1}** This case involves a complaint filed in the general division of the Columbiana County Court of Common Pleas for fraud, conversion, misappropriation, undue influence, conspiracy, and intentional interference with expectancy of inheritance ("IIEI"). Appellants/Plaintiffs Denise Rutan and Danny Kelly were named in the will of their mother Lois Kelly who died in 2019. Lois was preceded in death by her husband Gerald, who died in 2014. Appellants claim that their siblings, as well as other defendants connected to a family business, squandered their parents' personal and business assets, and in doing so deprived Appellants of any inheritance from their parents. The factual underpinning of all the claims is an allegedly fraudulent transfer in 2010 of shares of stock of the family business. The defendants to the trial action filed motions for summary judgment, and Appellants responded. The court characterized all of Appellants' causes of actions as arising from fraud, and the court granted Appellees' (who are Appellants' siblings) motions for summary judgment on the ground that the four-year statute of limitations for fraud found in R.C. 2305.09(C) had expired prior to the filing of the 2023 lawsuit. The court also held that, although the discovery rule for fraud contained in R.C. 2305.09(E) applied, Appellants discovered or should have discovered the alleged fraud by at least 2014, thus, the statute of limitations expired in 2018.

**{¶2}** Appellants raise three arguments on appeal. First, they contend that the court failed to apply a reasonable person standard in its application of the discovery rule.

They claim that a reasonable person would not have discovered the fraud until 2019, after their mother died and they found out they would not receive an inheritance from either parent. The standard for applying the discovery rule for fraud is that the statute of limitations begins to run when the plaintiff discovered or should have discovered the alleged injury. The trial court correctly applied this rule based on the allegations of fraud that Appellants admittedly knew as early as the 1990s and were thoroughly aware of by 2014. Applying the discovery rule, the statute of limitations for fraud began to run at least by 2014, and Appellants' 2023 complaint is time barred.

{¶3} Second, Appellants argue that they did not have standing to file an IIEI action until 2019 when Lois died, so their causes of action were not ripe until 2019. They argue that the statute of limitations could not have started to run until standing and ripeness were both satisfied. This argument, however, was not made to the trial court and is waived.

{¶4} Third, Appellants argue that counts eight and nine of the complaint should not have been dismissed because they were independent of the the other counts. The record shows that counts eight and nine were dependent on the court making particular findings in the first seven counts, and because the first seven counts were appropriately dismissed due to the running of the statute of limitations, the court properly dismissed counts eight and nine as well. The court correctly granted summary judgment to Appellees, and the judgment is affirmed.

## Facts and Procedural History

{¶5} The Plaintiffs/Appellants in this case are siblings Denise Rutan ("Denise") and Danny Kelly ("Danny"). Defendants/Appellees Ronald Kelly, Cheryl Pierce, Sandra Kelly Hughes, and Jeannie Parker are also siblings. The parents of these six siblings

were Gerald Kelly ("Gerald") and Lois Kelly ("Lois"), who died in 2014 and 2019 respectively.

{¶6}   Gerald and Lois were founders of a company called Yellow Creek Casting Co., Inc. ("YCC") in Wellsville, Ohio, a cast-iron and steel manufacturing business.  They each owned one-half of the total 750 shares of common stock.  In addition to Appellants' siblings, YCC and persons who worked for it are also Appellees in this matter.

{¶7}   Appellant Danny resided primarily in the State of New York since first moving there in 1971.  In the mid 1990s, he commuted from New York to work at YCC and also ran a foundry located across the street from YCC.  While working at YCC, Danny became versed in both the production side of the business as well as the financial side.  In 1992 Danny intended to buy the assets of YCC and reincorporate under a new name.  He was encouraged to do this by Lois, but Gerald did not approve of Danny's plan.  In 1997 Danny stopped working at YCC altogether.  After he left YCC, Danny had very little contact with his parents.

{¶8}   While working at YCC in the 1990s, Danny uncovered questionable activities taking place in the business.  He described his sister Cheryl Pierce and her husband David Pierce as "no show" employees, and he fired them.  He also suspected Sandra Kelly Hughes, who began working at YCC in 1995, of engaging in financial misconduct.

{¶9}   Appellant Denise Rutan was employed at YCC for a brief period in the 1980s.  In 2007 she did some cleaning work at YCC.  In 2010, Denise spoke with Gerald about his concerns that the company should have been making more money.  She suggested that the company books be audited.  Gerald and Lois agreed, but the audit did not take place.  At some point in 2010, Gerald told Denise that the common shares of

stock would be equally transferred to her siblings Cheryl Pierce, Sandra Kelly Hughes, and Ronald Kelly. The other three siblings would receive no common stock. After 2010, Gerald and Lois were no longer listed in the corporate records or tax filings as shareholders, and they were not paid salaries, bonuses, or dividends.

{¶10} In 2012, Sandra Kelly Hughes discussed with Denise the common stock transfer. Sandra Kelly Hughes started working at YCC in the 1990s, became the office manager, and left in 2012. Also in 2012, Denise obtained shares of preferred stock in the company. She was later told by Appellee Dan Wolfe, a CPA who performed services for YCC, that the preferred shares were worthless and would not generate dividend payments. At about that same time, Sandra Kelly Hughes told Appellant Danny about the stock transfer and that Dan Wolfe was involved in the stock transactions.

{¶11} During 2012, Sandra Kelly Hughes told Appellant Denise that she had been keeping two sets of accounting books at YCC, and that Gerald was only shown one set of books. Sandra Kelly Hughes opined that if Gerald knew how much money the company had been making, he would have taken that money out of the company. Sandra Kelly Hughes also told Denise that improper tax documents were prepared, assets were concealed, and company records were altered. Denise learned that Sandra Kelly Hughes was ousted from her job at YCC in 2012, despite being a major shareholder. Denise learned that her siblings were allegedly converting YCC funds for personal use, and personal expenses were being charged to the company. Denise suspected at that time that Sandra Kelly Hughes was also likely involved in the conversion of YCC funds and assets.

{¶12} In Denise's deposition, she admitted that in 2012 Sandra Kelly Hughes confessed to these bad acts in writing. The confession includes details of alleged

misappropriation of funds by Sandra Kelly Hughes, Cheryl Pierce, and Ronald Kelly. Appellant Danny received the same information by email. He referred to Appellees' activities as embezzlement.

**{¶13}** In 2013, Appellant Danny had a conversation with Gerald and Lois regarding obtaining a loan from them. They told him at that time they had no money and that Jeannie Parker was in charge of their finances.

**{¶14}** In 2014, Appellant Denise learned that her siblings were allegedly emptying their parents' bank accounts. This information again came from Sandra Kelly Hughes. Denise testified that she tried to stop her siblings from draining the accounts prior to Lois's death in 2019.

**{¶15}** On October 14, 2014, Appellant Denise purchased one-half of Sandra Kelly Hughes' stock in YCC for $1. The sales agreement stated that Hughes owned 50% of the YCC stock, thus making Denise a 25% owner. Denise never discussed this stock purchase with Gerald or Lois, or with Appellee Wolfe. It was not until 2023 that Denise first asked the YCC Board of Directors to honor her ownership interest.

**{¶16}** Appellants' complaint alleges that Gerald Kelly died testate on December 16, 2014 and Lois Kelly died testate on December 1, 2019. Appellants allege that Gerald's will was not admitted to probate, and the primary or sole beneficiary was Lois Kelly. They allege that Lois's will was dated December 30, 2014 and was likewise not admitted to probate, and that all six of her children, including Appellants, are listed as beneficiaries of the will. These allegations are not disputed.

**{¶17}** Appellants filed a complaint in the Columbiana County Court of Common Pleas General Division on July 31, 2021 ("2021 complaint"). It named 20 defendants and contained claims of interference with inheritance, conversion, fraud, conspiracy, and a

request for an accounting. The complaint was extensively litigated and entered the summary judgment stage, but was voluntarily dismissed with prejudice on July 28, 2023.

{¶18} On September 22, 2023, Appellants filed a second complaint in the Columbiana County Court of Common Pleas General Division ("2023 complaint"). This complaint contained somewhat different defendants, contained modified allegations, and sets forth additional factual circumstances. It named seventeen defendants, some of which were not named in the 2021 complaint, such as YCC.

{¶19} The 2023 complaint has nine counts: (1) intentional interference with inheritance; conversion and misappropriation; (2) intentional interference with expectancy of inheritance: fraud; (3) intentional interference with expectancy of inheritance: illegality of transaction; (4) undue influence; (5) alteration of documents; (6) conspiracy; (7) request for accounting; (8) declaratory judgment; and (9) conversion of stock and capital account.

{¶20} On October 25, 2023, Appellees Sandra Kelly Hughes and Emmet Hughes filed a motion to dismiss. The remaining defendants followed with their own motions to dismiss. On March 13, 2024, the trial court denied the motions to dismiss, and in a lengthy judgment entry ruled that the general division of the court, rather than the probate division, had jurisdiction over the complaint. The court ruled that dismissal under Civ.R. 12(B)(1) for lack of subject matter jurisdiction was not appropriate as the actual nature and essential character of Appellants' complaint was fraud, and that Appellants "do not dispute this characterization of their claims." The court cited Appellants' brief in opposition to the motions to dismiss: "Plaintiffs' primary and core causes of action in this case center on Defendant's attempts to defraud and otherwise illegally cause decedents to transfer their stock shares to the Defendants, Sandra Kelly Hughes, Ronald Kelly, and Cheryl Pierce." (12/15/23 Brief in Opposition, p. 2). The next sentence of the brief in opposition states:

"The primary causes of action allege those stock transfers never happened." (12/15/23 Brief in Opposition, p. 2-3). The court determined that the complaint was divided into claims of intentional interference with expectancy of inheritance through conversion, misappropriation, fraud, illegal transaction, undue influence, fraudulent alteration of documents, conspiracy, and fraudulent conversion of stock and capital account. The trial court held that, as a matter of law, these causes of action were governed by the four-year statute of limitations for fraud pursuant to R.C. 2305.09. The court also held that the discovery rule for fraud in R.C. 2305.09(E) applied, and that there were factual matters in dispute that prevented dismissal under Civ.R. 12(B)(6).

**{¶21}** On May 10, 2024, Appellees Sandra Kelly Hughes and Emmet Hughes filed a motion for summary judgment. The remaining defendants then filed their own summary judgment motions. The depositions of Appellants Danny Kelly and Denise Rutan were made part of the record in support of the motions, along with depositions from many other defendants.

**{¶22}** On February 20, 2025, the court filed a judgment entry granting summary judgment to all defendants on the first seven counts in the complaint, on the basis that the statute of limitations for fraud had expired at the latest by 2018, long before the 2023 complaint was filed. The judgment entry sets forth an extensive factual exposition citing to Appellants' deposition and other evidence of record showing that Appellants knew or should have known the basis for all seven causes of action by 2014, at the latest.

**{¶23}** Appellants filed a notice of appeal on March 21, 2025. On March 25, 2025 Appellants filed a motion for stay and limited remand for the trial court to clarify whether its ruling included counts eight and nine of the complaint. We granted the motion and remanded the case for the limited purpose of clarifying the disposition of counts eight and

nine in the final judgment entry. On April 30, 2025, the trial court issued another judgment entry holding that counts eight and nine sprang from the first seven causes of action. The court held that counts eight and nine were moot after the dismissal of the first seven claims, or in the alternative were barred by the four-year statute of limitations for fraud. The appeal was returned to active status and Appellants filed their brief. Three different Appellee briefs were filed. Appellants filed a single reply brief. Appellants assert three assignments of error.

Summary Judgment Standard

**{¶24}** An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603 (8th Dist. 1995).

**{¶25}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting

forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386 (8th Dist. 1997).

**{¶26}** The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327. A party cannot create a genuine issue of material fact by ignoring or contradicting their own deposition testimony. *Byrd v. Smith*, 2006-Ohio-3455, ¶ 28 (a party's affidavit that contradicts their deposition testimony does not create a genuine issue of material fact); *Isaac v. Alabanza Corp.*, 2007-Ohio-1396, ¶ 41 (7th Dist.) (self-contradictory statements by the plaintiff in a deposition cannot be used to overcome defendant's motion for summary judgment).

<u>ASSIGNMENT OF ERROR NO. 1</u>

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON DENISE AND DANNY'S CLAIMS OF INTENTIONAL INTERFERENCE WITH EXPECTANCY OF INHERITANCE ASSERTED IN THE FIRST THROUGH SIXTH CAUSES OF ACTION AND FINDING THEY WERE BARRED BY APPLICABLE STATUTES OF LIMITATIONS WHERE, CONTRARY TO THE COURT'S RULING, REASONABLE MINDS COULD

DIFFER AS TO WHEN A "REASONABLE" PERSON SHOULD HAVE DISCOVERED THE ALLEGED ACTIONABLE CONDUCT AND INJURIES, AND THUS, WHEN THE STATUTE OF LIMITATIONS ACCRUED UNDER THE DISCOVERY RULE.

**{¶27}** Appellants argue that the trial court failed to properly apply the discovery rule when it determined that the statute of limitations for fraud set forth in R.C. 2305.09(C) applied to the claims in their complaint. Appellants do not dispute that R.C. 2305.09(C), the four-year statute of limitations for fraud, applies (at least in part) to this case, but they believe their 2023 complaint overcame any statute of limitations problem that may have existed in their 2021 complaint. Appellants contend that they are now arguing they first discovered the facts giving rise to their claims after Lois's death in 2019. They argue that even though they knew about the alleged fraudulent activities surrounding the 2010 YCC stock transfer, they still believed Gerald and Lois had substantial assets apart from YCC that would pass to Appellants through Lois's will.

**{¶28}** Put another way, Appellants contend they had a sense that their parents had significant assets including YCC stock, that their parents wanted to give some of their assets to Appellants when they died, and that they did not know Appellees had squandered both the company assets as well as their parents' personal assets until after Lois died. They argue that Appellees fraudulently claimed that they owned all the company stock, fraudulently managed the company without authority to do so, and fraudulently dissipated Gerald and Lois's personal assets. Thus, the overall claim made in Appellants' complaint is one of intentional interference with the expectation of inheritance ("IIEI") based on fraud.

{¶29} The Ohio Supreme Court recognized the tort of IIEI in *Firestone v. Galbreath*, 67 Ohio St.3d 87 (1993). The elements are:

> (1) an existence of an expectancy of inheritance in the plaintiff; (2) an intentional interference by a defendant(s) with that expectancy of inheritance; (3) conduct by the defendant involving the interference which is tortious, such as fraud, duress or undue influence, in nature; (4) a reasonable certainty that the expectancy of inheritance would have been realized, but for the interference by the defendant; and (5) damage resulting from the interference.

*Id.* at 88.

{¶30} Normally these claims are litigated in probate court under that court's plenary jurisdiction because initial questions about the expectancy of inheritance are dependent on the terms of a will and the contents of the probate estate. "The general division of the court of common pleas would normally need to wait for these issues to be resolved before proceeding with a related tort action." *In re Estate of Goehring*, 2007-Ohio-1133, ¶ 66 (7th Dist.). The trial court in this case, in ruling on motions to dismiss for lack of jurisdiction, held that it did have proper jurisdiction because neither Gerald's nor Lois's will had been probated. Both Appellants could have opened a probate estate if, as they allege, they are mentioned in the wills and as such are heirs and interested parties in the probate estate. R.C. 2721.05. Some of the Appellees raise this jurisdictional issue on appeal, but Appellees did not file cross-appeals, and as the issues raised by Appellants only address questions regarding the statute of limitations this issue has been waived.

**{¶31}** Appellants' arguments in this matter are, to say the least, very muddled. They do not plead a typical claim of IIEI, in which the alleged fraud is some type of tampering with the creation of a will or invalidating testamentary documents. Many, if not most, IIEI cases involve claims arising from fraud in the creation or destruction of a will or estate planning document, thus depriving the plaintiff of a testamentary inheritance. *See, e.g.*, *Vondrasek v. Heiss*, 2024-Ohio-3061 (11th Dist.) (fraud in manipulating transfer on death designations and changing beneficiaries); *Carpenter v. Carpenter*, 2023-Ohio-274 (7th Dist.) (fraud based on improper creation of Medicaid protection trust); *Widok v. Estate of Wolf*, 2020-Ohio-5178 (8th Dist.) (fraud perpetrated by the intentional destruction of the will); *Krohn v. Ostafi*, 2020-Ohio-1536 (6th Dist.) (defendant induced father to make transfer on death changes to exclude the plaintiff). Appellants simply complain that they believed their parents had substantial personal assets during their lives and that Appellants did not receive any of that money after their parents died, as they had hoped. They believe Appellees are responsible for that situation. They do not argue that Appellees exerted any influence over the content of Gerald and Lois's wills.

**{¶32}** It is very difficult to uncover a consistent line of argument from Appellants' briefs. They allege fraud by the Appellees going back to the 1990s, but contend their claims, based on fraud, only arose after 2019. Denise claims she both owns stock and does not own stock, that it is valuable stock and that it is worthless, that there were stock transfers in 2010, 2012, and 2014, and that there were no such transfers. Despite the extensive citations in the trial court's final judgment that contradict their arguments, Appellants maintain that it was reasonable for them not to act on the evidence of fraud they had been aware of since the 1990s, and that the discovery rule preserves their causes of action.

Case No. 25 CO 0005

{¶33} R.C. 2305.09(C) provides for a four-year statute of limitations in which to bring causes of action alleging fraud. R.C. 2305.09(E) applies a discovery rule for a claim of fraud. "The discovery rule tolls the statute of limitations only until the plaintiff has an 'indication' of the defendant's wrongful conduct." *Doane v. Givaudan Flavors Corp.*, 2009-Ohio-4989, ¶ 14 (1st Dist.), citing *Norgard v. Brush Wellman, Inc.*, 2002-Ohio-2007. The Ohio Supreme Court has interpreted the discovery rule to mean that the statute of limitations commences when the complainant has discovered, or should have discovered in the exercise of reasonable diligence, the alleged fraud. *Investors REIT One v. Jacobs*, 46 Ohio St.3d 176, (1989), paragraph 2b of the syllabus (referring to an earlier version of R.C. 2305.09):

> For example, if the cause of action is for fraud, the cause does not accrue until either the fraud is discovered, or in the exercise of reasonable diligence, the fraud should have been discovered. [ ] Thus, the applicable statute of limitations is triggered by the "constructive knowledge of facts, rather than actual knowledge of their legal significance . . ."

*Id.* quoting *Flowers v. Walker*, 63 Ohio St.3d 546, 549 (1992); *see also Doe v. Archdiocese of Cincinnati*, 2006-Ohio-2625, ¶ 21.

{¶34} We have similarly described this rule: "Under the discovery rule, the statute of limitations does not begin to run until the plaintiff discovered, or through the exercise of reasonable diligence, should have discovered, the complained of injury." *Porter v. Probst*, 2014-Ohio-3789, ¶ 24 (7th Dist.).

{¶35} Appellants urge that a reasonable person standard applies to the use of the discovery rule, and that a reasonable person would not have been looking for fraudulent

activity until after Lois's death, since that is when Appellants would have expected to inherit. Appellants argue that the trial court should not have relied on proof as to when they actually learned about the alleged fraud and should only have considered when a reasonable person would have tried to uncover it, which they believe would only occur after the testator has died.

{¶36} Although a reasonable person standard applies to the discovery rule in certain circumstances, it does not supplant the fact that an actual knowledge standard also applies. Thus, the discovery rule operates both subjectively (actual knowledge) and objectively (knowledge that could have been gained using reasonable diligence). Although the trial court relied on what Appellants "should have known" and the objective aspect of the discovery rule, Appellants' actual knowledge of events from the 1990s through 2014 contributes to any analysis as to what they should have known using reasonable diligence.

{¶37} Appellees raise several rebuttal arguments that go beyond the trial court's statute of limitations rationale. Appellee Dan Wolfe (the CPA who did work for YCC, including the preparation of tax documents) argues that Appellants presented insufficient evidence to support any of their claims, including failing to provide evidence of any monetary damage. This is significant, because the trial court's basis for retaining jurisdiction over the case (despite a clear preference in the law for jurisdiction in the probate court) was Appellants' claim for money damages that a probate court would be unable to award.

{¶38} The joint brief of Appellees Ronald Kelly, Erin Kelly Miller, Amanda Fry, Cheryl Pierce, David Pierce, Jeannie Parker, Sandra Kelly Hughes, Emmet Hughes, and YCC argues that use of a reasonable person standard for the discovery rule is

unnecessary here, because Appellants were on actual notice of the allegedly fraudulent and tortious behavior prior to 2014. All of Appellants' claims are governed by various four-year statutes of limitation and those statutes expired, at the latest, by 2018 based on actual knowledge of Appellants' claimed injuries.

**{¶39}** The Appellee brief of Byler, Wolfe, Lutsch & Kampfer, CPAs, Inc. (Appellee Byler) agrees with these arguments: that all of the claims in the complaint are subject to a four-year statute of limitations, and that actual subjective knowledge of the claimed injuries partly determines the application of the discovery rule. Appellee Byler argues that even when the discovery rule is applied, the reasonableness of a plaintiff's actions are not examined in a vacuum. The court must look at what the plaintiff actually knew, and in that light, what action that plaintiff would take using reasonable diligence. Here, Appellants testified they discovered various fraudulent acts (whether it related to stock transfers, Appellees' alleged mismanagement of the company and improper use of YCC funds, improper filing of tax returns, using multiple sets of accounting books, the spending of Gerald and Lois's money, etc.) over the course of several years, but at the latest, by 2014.

**{¶40}** Despite Appellants' attempt to complicate this case, the answer to the statute of limitations question is quite simple. This case is about fraud involving the personal and corporate assets of Gerald and Lois Kelly. The extent of the fraud in this case was known, or should have been known by Appellants by 2014 at the latest, by their own admissions. Hence, they were required to file their lawsuit by 2018 at the latest. Even though the lawsuit was framed as an IIEI claim, the essence and root of the complaint was fraud and Appellants' claims were consistently presented in that manner to the trial court. The trial court's judgment entry carefully set out the undisputed evidence

regarding Appellants' knowledge of this alleged fraud prior to 2014, almost all of which is found in Appellants' own deposition testimony.

**{¶41}** Appellant Denise Rutan testified at deposition testimony that she knew she was named as a beneficiary in her parents' wills as early as 2009 or 2010. (Denise Depo., pp. 23-24.) She was aware in 2012 that Sandra Kelly Hughes believed she was being forced out of YCC. Sandra Kelly Hughes told Denise that various siblings were misusing YCC funds to buy personal items. (Denise Depo., p. 44.) They would buy a car or a countertop and charge it to the YCC capital spending account. (Denise Depo., p. 45.) As early as 2012, Denise was told that Sandra Kelly Hughes was keeping multiple sets of accounting books to conceal certain expenditures and that Gerald Kelly was being shown only one set. (Denise Depo., p. 58.) She had information that tax returns were being altered to conceal the expenditures. (Denise Depo., p. 62.) At that time, Denise talked to her parents about some of the accusations and suggested conducting an audit. (Denise Depo., p. 49.) Denise chose not to tell her parents about the accounting manipulation because she did not think they would listen to her. (Denise Depo., p. 53.) She believed many of her parents' assets were being concealed by her siblings, including cash, a house in North Lima, treasury bills, certificates of deposit, vehicles, and the contents of safe deposit boxes. (Denise Depo., p. 64.) Denise was aware of all these actions in 2012, according to her own testimony. Denise also testified that Sandra Kelly Hughes sold Denise her shares of stock in 2014 amounting to a 25% share of YCC. (Denise Depo., p. 192.). Hence, Appellant Denise became a major stockholder in the company, or at least believed she was at that time.

**{¶42}** Appellant Danny provided contradictory deposition testimony as to whether he had any expectation of an inheritance at all. At first, he stated unequivocally that he

had no expectation of any inheritance. (Danny Depo., pp. 41, 42.) Then he testified that he did have some expectation of inheritance in 1991, namely, that he would inherit enough to help pay for the cost of building his house and his barn. (Danny Depo., p. 43.) Danny worked at YCC until 1997 and learned all of the aspects of the business. (Danny Depo., pp. 27-28, 45, 219, 223-224.) He knew that Cheryl Pierce and David Pierce were being paid, but were not doing any work, and so he fired them. (Danny Depo., p. 231; Cheryl Pierce Depo., p. 16.) He knew in 2013 that Jeannie Parker was solely in control of the finances of Gerald Kelly and Lois Kelly and that they had very little money left at that time. (Danny Depo., p. 60.) He knew that Sandra Kelly Hughes had been the office manager of YCC since the 1990s, that she left in 2012, but had remote access to all of the company's records. (Danny Depo., pp. 53-54.) When Sandra Kelly Hughes tried to reinstate herself into the company, Danny was aware that Sandra Kelly Hughes had knowledge of "lots of nefarious activities which were documented by her paperwork." (Danny Depo., p. 54.) This included evidence of employees writing personal checks from office accounts, buying houses and cars with company money, and directly moving money from business accounts to personal accounts. (Danny Depo., pp. 54-55.)

{¶43} Even if we presume that all of this knowledge was not sufficient to take legal action at the time and that Appellants needed more evidence, the discovery rule does not preserve their claims. The discovery rule imputes constructive knowledge, *i.e.*, what could have been discovered using reasonable diligence. *Flowers* at 549. If, as they aver, Appellants knew that Sandra Kelly Hughes had all the necessary records in her possession to prove that YCC assets were being systematically drained, and they knew that the company was the basis of Gerald and Lois's wealth, then Appellants should have fully uncovered or attempted to uncover the fraud, conversion, and any other misdeeds

when they had the opportunity to do it, which based on this record was no later than 2014 when Denise believed she became a stockholder.

**{¶44}** All of the foregoing assumes, as the trial court did, that Appellants' claims are entirely based on fraud. It is the allegation of fraud that triggers application of the discovery rule. Appellants also contend that the discovery rule directly applies to the tort of intentional interference with the expectancy of inheritance, absent an allegation of fraud. It does not. R.C. 2305.09(E) specifically pertains to the tort of fraud. The statute does not mention or even imply that it applies to intentional torts, such as intentional interference with an expectancy of inheritance. We came to a similar conclusion in another case involving an IIEI claim: "Appellants provide no cases where a court has applied the discovery rule to the tort of intentional interference with the expectancy of inheritance, and there does not appear to be any such caselaw." *In re Estate of Goehring*, 2007-Ohio-1133, ¶ 79 (7th Dist.). Other courts have held that claims involving tortious interference do not invoke the discovery rule. *See Wilkerson v. Hartings*, 2009-Ohio-4987, ¶ 11 (1st Dist.) (it does not apply to claims for intentional interference of business opportunities); *Porter v. Probst*, 2014-Ohio-3789, ¶ 23 (7th Dist.) (it does not apply to any claims of tortious interference). We are only aware of one case post-dating *Estate of Goehring* where the fraud provision of R.C. 2305.09(E) has been applied to an IIEI claim, and that was only because the essence of the IIEI claim was fraud, just as in the matter before us. *McDougal v. Vecchio*, 2012-Ohio-4287 (8th Dist.).

**{¶45}** If Appellants now contest characterization of their claims as essentially fraud, then they cannot avail themselves of the discovery rule. Only because they have accepted that the essence of all their claims is fraud can they attempt to apply the

discovery rule.  Regardless, it is clear from the undisputed facts that the four-year statute of limitations expired long before the filing of Appellants' 2023 complaint.

{¶46}  If Appellants believed fraud was taking place from the 1990s through 2014, as their evidence demonstrates, it was the discovery of this fraudulent activity that triggered the running of the discovery rule and the statute of limitations.  If they contend, as they now imply, that the fraud did not impact them at the time because they were waiting to see what their actual inheritance would be, then their causes of action are not based on fraud and the discovery rule does not apply.  Nevertheless, the harm for which they are seeking redress (and which they admittedly knew about) occurred from the 1990s through 2014, no matter how Appellants now frame the matter.

{¶47}  Appellants' arguments in their 2023 complaint shifted from the allegations raised in their 2021 complaint.  They now allege a fraud in the transfer (or attempted transfer) of shares of YCC to Ronald Kelly, Sandra Kelly Hughes, and Cheryl Pierce while at the same time concealing the transfer in Cheryl Pierce's bankruptcy proceedings.  Appellants contend that the lack of a signature on the stock certificates, while the parties acted as if the certificates were signed, was a type of fraud.  The 2023 complaint is also based on fraudulent transfer (or attempted transfer) of "preferred" shares of stock to Denise and to another sister, Jeannie Parker, shares that were discovered to be worthless as early as 2012.

{¶48}  Appellants try to use the discovery rule which applies to discovery of factual matters, to somehow apply to their discovery of legal theories once they learned of the steps necessary to effectuate a gift of stock shares.  Appellants argue that they were ignorant of the details of the board meeting that happened in December of 2010 where the stock was purportedly transferred from Gerald and Lois to Appellants' siblings until

they obtained new information in 2020 and began additional discovery through their 2021 lawsuit. Appellants claim they then discovered the stock certificates were not signed, and thus, they now believe no real transfer of ownership took place. Appellants argue that they initially believed Appellees' fraudulent action was in transferring the stock, but since 2020 they now believe the fraud was in failing to actually transfer the stock while acting as if they had ownership of the company. Appellants explain that these additional details allowed them to frame a new complaint in 2023 with better legal theories.

**{¶49}** Whether or not these allegations are true is irrelevant to the trial court's decision as to the statute of limitations. Appellees' exploration of an additional claim of fraud does not change the factual basis of the fraud, only the legal theory of recovery. "[T]he discovery rule applies to the 'discovery of facts, not to the discovery of what the law requires.' (Emphasis deleted.) *Lynch v. Dial Finance Co. of Ohio No. 1, Inc.* (1995), 101 Ohio App.3d 742, 747, 656 N.E.2d 714." *Koe-Krompecher v. City of Columbus,* 2005-Ohio-6504, ¶ 15 (10th Dist.). Appellants admittedly knew or should have known by 2014 and earlier the facts that cause them to assert a fraud was taking place, and that fraud forms the basis of their IIEI tort, as well as the other counts in the complaint. The endorsement or lack of endorsement on stock certificates raises an interesting legal question, but does not support a new factual basis on which to review the relevant statute of limitations question under the facts of this case.

**{¶50}** The trial court conducted the correct analysis based on the undisputed evidence in the record to conclude that Appellants knew or should have known of the tortious activity that underlies all of their claims no later than 2014. Any complaint, then, was required to be filed by 2018. Appellants' complaint was filed in 2023. Although our review is de novo, it is based only on what was actually in front of the trial court, including

Case No. 25 CO 0005

the arguments that were made there. Appellants' argument to the trial court was that the essential character of all of their claims was fraud. There is no genuine issue of material fact raised by the evidence and there is no question Appellants failed to satisfy the four-year statute of limitations for fraud. Appellants' first assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT'S GRANT OF SUMMARY JUDGMENT IS ERROR BECAUSE DENISE AND DANNY COULD NOT HAVE BROUGHT A CASE FOR INTENTIONAL INTERFERENCE WITH EXPECTANCY OF INHERITANCE CASE PRIOR TO LOIS' DEATH BECAUSE THEY DID NOT HAVE STANDING TO BRING AN INTENTIONAL INTERFERENCE WITH INHERITANCE CLAIM AND THE CLAIM WAS NOT RIPE.

{¶51} Appellants claim that the statute of limitations for fraud could not start running until they had standing to file their intentional interference with an expectancy of inheritance tort. Appellants cite no law in support of this proposition. Appellants also claim that such torts are not normally ripe until the death of the decedent from whom the expectancy arises or until the probate proceedings have been exhausted. *Sirak v. Arenstein*, 2011-Ohio-5266, ¶ 52 (5th Dist.); *Wickline v. Hoyer*, 2012-Ohio-945, ¶ 14 (10th Dist.). Appellants argue that only their parents had standing to bring an interference with inheritance claim grounded in fraudulent inducement prior to 2019, while Appellants' claims only became ripe after 2019, when the second parent died.

{¶52} Ripeness and standing are two distinct legal doctrines. "Ripeness focuses on whether a case is premature or not yet ready for judicial review. It deals with potential

or anticipated harms that have not yet fully materialized—whether an asserted harm has matured sufficiently to warrant judicial intervention." *Mundy v. Centrome, Inc.*, 2024-Ohio-3358, ¶ 41 (12th Dist.). Standing, on the other hand, determines "whether a litigant is entitled to have a court determine the merits of the issues presented." *Moore v. Middletown*, 2012-Ohio-3897, ¶ 20. "Standing does not depend on the merits of the plaintiff's claim. Rather, standing depends on whether the plaintiffs have alleged such a personal stake in the outcome of the controversy that they are entitled to have a court hear their case." (Citations omitted.) *ProgressOhio.org, Inc. v. JobsOhio*, 2014-Ohio-2382, ¶ 7.

**{¶53}** A statute of limitations is yet another separate issue:

> A statute of limitations establishes "a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered)." Black's Law Dictionary 1707 (11th Ed.2019). A statute of limitations operates on the remedy, not on the existence of the cause of action itself.

*Wilson v. Durrani*, 2020-Ohio-6827, ¶ 9.

**{¶54}** The purposes of a statute of limitations have been expressed as:

> (1) ensuring fairness to the defendant, (2) encouraging prompt prosecution of causes of action, (3) suppressing stale and fraudulent claims, and (4) avoiding the inconveniences engendered by delay - specifically, the difficulties of proof present in older cases.

*Doe v. Archdiocese of Cincinnati*, 2006-Ohio-2625, ¶ 10.

Case No. 25 CO 0005

**{¶55}** The mere fact that a statute of limitations is running or might expire does not give a party standing to sue, nor does an unexpired statute of limitation guarantee that a claim is ripe for review. Appellants are raising arguments on appeal attempting to link ripeness, standing, and the statute of limitations for fraud. Appellees respond that this line of argument has been waived because Appellants did not make this argument in the trial court. Appellees are correct that new arguments or legal theories cannot be raised for the first time on appeal. "It is axiomatic that a plaintiff cannot change the theory of his case and present new arguments for the first time on appeal." *Snyder v. Lawrence*, 2020-Ohio-3358, ¶ 27 (7th Dist.). New arguments raised for the first time on appeal have already been waived and should not be addressed. *Falcon Drilling Co., LLC v. Omni Energy Group, LLC*, 2024-Ohio-2558, ¶ 80 (7th Dist.); *In re Criner*, 2001-Ohio-3342 (7th Dist.).

**{¶56}** In examining Appellants' various responses to the motions for summary judgment we have determined that Appellants' line of argument in the trial court was that they did not understand the true nature of Appellees' fraudulent activities until discovery took place following the filing of their 2021 complaint. These arguments address the statute of limitations for fraud and the application of the discovery rule. Appellants never argued that it was impossible to file a lawsuit earlier than 2019 due to some lack of standing or lack of ripeness. They simply sought to delay the initial date for running the discovery rule began until 2019 when Lois died (or until 2021, when they uncovered stronger legal arguments).

**{¶57}** Appellants' new assertion on appeal that they could not have filed any actions against the various Appellees until Lois's death in 2019 due to lack of standing or lack of ripeness does not survive even a superficial scrutiny. There were fraud claims

Case No. 25 CO 0005

that could have been brought as early as 2010 since Denise was, or believed herself to be, a preferred shareholder of YCC in 2010 and holder of common shares in 2012. Further, if Appellants were alerted they had an expectancy of inheritance on or before 2014 (which is what both admitted in their deposition testimony) they could have filed an IIEI suit, since IIEI does not require proof that the expectancy has vested. *Brown v. Ralston*, 2016-Ohio-4916, ¶ 20 (7th Dist.). The reality is that Appellants did not attempt to discover the full details of the alleged fraud or preserve any cause of action for fraud at the time they learned of it. Whether they had standing or whether their claims were ripe, and how those issues might overlap with application of the statute of limitations for fraud, are separate discussions that were not raised at the trial court level. Appellants' second assignment of error has been waived and is overruled.

ASSIGNMENT OF ERROR NO. 3

> COUNTS 8 AND 9 SHOULD NOT HAVE BEEN BARRED BY THE STATUTE OF LIMITATIONS BECAUSE TOGETHER THE COUNTS SEEK TO REDRESS CONVERSION OF SHARES, CAPITAL ACCOUNT AND ATTRIBUTABLE DISTRIBUTIONS THAT TOOK PLACE IN 2019 AND 2020 AND THE CAUSES WERE FILED WITHIN THE 4 YEAR STATUTE OF LIMITATIONS.

**{¶58}** Appellants argue that counts eight and nine of the complaint were alternative to the other claims and should not have been dismissed as dependent on the survival of the first seven claims. Appellants, oddly, begin their argument by saying that counts eight and nine are contingent on the court rendering factual findings that arise from the first seven counts. Appellants argue that, if the court makes a finding on the

validity of a 2010 stock transfer to Sandra Kelly Hughes, it can then rule on counts eight and nine. Since the court dismissed the first seven counts due to the expiration of the statute of limitations, it was not required to make any advisory findings arising out of those counts, including findings as to fraud or conversion regarding a 2010 stock transfer. In fact, such findings would be impermissible. This is in essence what the trial court held in its supplemental judgment entry of April 30, 2025, although the court expressed dismissal of the claims in the alternative: either they are moot, or they also are barred by the expiration of the statute of limitations.

{¶59} The trial court's supplemental judgment entry points out that count eight is premised on the court ruling on one or more of the first seven counts of the complaint. Count one in particular seeks for the court to rule on the validity of the Appellant Denise's preferred stock, the validity of the transfer of common stock to Sandra Kelly Hughes, the validity of the transfer of stock from Sandra Kelly Hughes to Denise, as well as the validity of various persons acting as owners of YCC by virtue of their ownership of its common stock. Since count one was dismissed due to the expiration of the statute of limitations, the trial court correctly declined to make any findings related to that count, and the derivative count eight fails as well.

{¶60} Count nine is likewise dependent on the trial court making a finding from count one that Sandra Kelly Hughes was the rightful owner of common stock in 2010 and that Denise rightfully purchased half those shares for $1 in 2014. Count nine is also specifically linked to the fraud claim in count two. Since counts one and two have been dismissed, count nine cannot survive.

{¶61} Nevertheless, Appellants put forward the same argument here that they made in their second assignment of error: that they had no standing to bring an action

regarding the 2010 stock transfer until 2020 or later when Denise discovered she was not being paid dividends on the stock. Denise argues that she believed Sandra Kelly Hughes was given 375 shares of common stock in 2010, that Sandra Kelly Hughes sold half of those shares to Denise in 2014, and that both Appellants found out in 2020 that the transfer of stock to Sandra Kelly Hughes in 2010 was not properly executed. Despite these allegations, Appellants argue that if Sandra Kelly Hughes did own the stock in 2010, then Appellant Denise should have been receiving dividends since 2014, and she had standing to make a claim for unpaid dividends beginning in 2020.

{¶62} As Appellees point out, Appellants simply disregard the statute of limitations in this argument. Appellants knew about the 2010 stock transfers at the time they happened. Appellant Denise was aware her preferred shares were worthless and would not receive dividends at the time she received the shares. She knew the questionable nature of her purchase of Sandra Kelly Hughes' common stock for $1 when she purchased the stock in 2014. Denise's failure to examine whether the stock she was purchasing was actually signed not only impacts her statute of limitations argument, it negates the cause of action for fraud altogether. "The failure to read the terms of a contract 'drives a stake into the heart' of a fraud claim." *Fertilizer Storage Co., LLC v. Heartland Bank*, 2024-Ohio-4836, ¶ 16 (3d Dist.). The facts that were available to Appellants from 1990 through 2014 triggered the running of any statute of limitations Appellants seek to rely upon. The statute of limitations for fraud is the one raised in the trial court and the one that was relied on by the trial court. This statute ran out in 2018, precluding Appellants from any recovery for acts arising from all alleged fraudulent activity regarding the YCC stock.

**{¶63}** We agree with the trial court that counts eight and nine became moot once the first seven counts were dismissed due to the statute of limitations. Appellants' third assignment of error is unpersuasive and is overruled. Hence, the judgment of the trial court in this matter is affirmed in total.

## Conclusion

**{¶64}** Appellants raise three arguments on appeal challenging the decision to grant summary judgment to Appellees in this matter. They argue that the trial court did not correctly apply the reasonable person standard in applying the discovery rule. They claim that a reasonable person would not have discovered the fraud they allege until 2019, and using that date, the statute of frauds had not expired when they filed their 2023 complaint. However, the trial court correctly relied on the "knew or should have known" standard of the discovery rule. The record reveals that Appellants knew or should have known the full extent of the fraud they believe underlies all their causes of action by at least 2014, and applying the discovery rule to that date, they had until 2018 to timely file their complaint, which was not filed until 2023. Appellants also argue that the statute of limitations for fraud did not begin to run until they had standing to file an IIEI action in 2019 when their mother Lois died, or until their case became ripe. Standing and ripeness are distinct legal concepts, and their relationship to the statute of limitations for fraud was not raised in the trial court proceedings, and so are waived on appeal. Finally, Appellants argue that counts eight and nine of the complaint should not have been dismissed because they were independent of the other counts. The record shows that counts eight and nine were clearly dependent on the court making particular findings in counts one and two, and because those counts were properly dismissed due to the statute of

limitations, the court dismissed counts eight and nine as moot. The court correctly granted summary judgment to Appellees, and the judgment is affirmed.

Hanni, J. concurs.

Dickey, J. concurs.

_____

For the reasons stated in the Opinion rendered herein, Appellants' assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed. Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**